MARYLAND CASUALTY COMPANY, Appellant, v. DUTCH MILL SERVICE COMPANY, Appellee.

No. 42972.

October 15, 1935.

Judson E. Piper and Homer M. Lyon, for appellant.

J. H. Johnson, for appellee.

POWERS, J.—The Maryland Casualty Company is a Maryland corporation with its home office at Baltimore, Maryland, engaged in the business of issuing insurance contracts and authorized to do business in the state of Iowa. It maintains an office at Des Moines, Iowa. The Dutch Mill Service Company is a corporation engaged in the retail merchandising of gasoline and oil and in the operation of gasoline service stations with its principal place of business at Knoxville, Iowa. The Maryland Casualty Company, appellant herein, will be referred to as the insurance company, and the Dutch Mill Service Company, appellee herein, will be referred to as the service company.

The insurance company began an action to recover the balance of an earned premium amounting to $141.01 on a policy of employer's liability and workmen's compensation insurance which it had previously issued to the service company. The service company filed an answer denying that it owed the amount claimed or any other amount. It also filed a counterclaim which alleged, in substance, the facts hereinafter referred to as being established by the evidence. It was in two counts. The first count asked judgment on the policy of insurance for $400. The

second count asked for judgment for the same amount as damages for false and fraudulent representations.

A jury was waived and the case was tried to the court. There was no dispute in the evidence as to plaintiff's claim for premium. The sole controversy was over the counterclaim. No evidence was introduced by the plaintiff in resistance to the counterclaim, and the sole question here is one of law with reference to the validity of the counterclaim.

The testimony introduced on behalf of the defendant fairly tended to sustain in general outline the allegations of fact in the counterclaim. From the evidence the following facts appear: In February, 1929, one Howard Reichard, who appears to have been engaged in the insurance brokerage business in Knoxville, called upon Mr. B. H. Gholson, president of the service company, accompanied by some person from Des Moines whose identity is not disclosed by the evidence. It appears that there had previously been some conversation between Reichard and Gholson with reference to a policy of employer's liability and workmen's compensation insurance, and that Mr. Gholson had expressed a desire to obtain a policy for the service company which would cover the executive officers of the service company when they were traveling by automobile over the country looking after the company's business. Mr. Reichard told Mr. Gholson that this man with him could issue the kind of policy that he wanted, and that by the addition of a rider to the regular employer's liability and workmen's compensation insurance policy and the payment of some additional premium it would cover the executive officers. The man accompanying Reichard confirmed this statement, and the policy was issued with the rider referred to attached. The rider was in the following form:

"Condition A of the Policy to which this Endorsement is attached is amended as follows:

"If this employer is a corporation, the entire remuneration of the President, any Vice-President, Secretary or Treasurer, shall be disclosed and made subject to a premium charge at the rate applicable to the hazard to which each such officer is exposed, which rate shall be applied to the actual remuneration of each such officer, but not in excess of $100 per week. If any such officer is exposed to varying hazards, a premium shall be charged on the basis of the highest rate for any hazard to which he is exposed.

"The provisions of Condition A not in conflict with the above amendments are to remain in full force and effect."

Gholson was told, when arrangements were made for the policy, that the policy would protect him and the other executive officers of the company while traveling by automobile about the country looking after the company's business, and that it would be unnecessary for him to obtain an accident policy. Gholson says that he relied upon this statement and by reason thereof did not individually obtain an accident policy for himself. In December, 1929, Gholson, while traveling in Indiana on the company's business, suffered an injury in an automobile accident and was incapacitated for five months and subjected to doctor bills in the sum of $100. He notified the insurance company but it failed to recognize any liability. Thereafter, in consideration of the service company continuing his salary during the period he was incapacitated, he orally assigned his claim against the insurance company to the service company. The full amount of the premium was to be determined by an audit of the pay roll of the insured. In checking the pay roll of the service company, the auditors for the insurance company included the salaries paid to the executive officers in computing the amount of the premium and told the executive officers that the reason they did that was because the officers were covered by the policy. The original statement furnished the service company was based on a pay roll which included the remuneration paid the executive officers. When controversy arose, the insurance company withdrew any claim for premium based on the remuneration of the executive officers, and such charge was not included in the statement of premium due on which suit was brought.

The trial court allowed a recovery on count 1 of the counterclaim to the defendant in the sum of $400, computing the amount of the recovery on the schedules of compensation provided in the Workmen's Compensation Act (Code 1931, sec. 1390), and allowing $100 for doctor bills and compensation at the rate of $15 per week for five months, or $300, making a total of $400. From this amount the court deducted the premium due the insurance company and entered judgment against the insurance company for the difference.

The insurance company, by reply to the counterclaim, by objections to the testimony offered in support of the counterclaim, and by motion for judgment at the close of the defend-

ant's evidence in support of the counterclaim, raised, among others, the following questions: First, that the policy contract issued by the plaintiff was purely one of workmen's compensation and employer's liability under the Iowa Workmen's Compensation Act and did not include any other form of benefits to employees; second, that only one policy of insurance was issued, and the said policy was between the insurance company and the service company, and that Gholson had no contract with the insurance company, and therefore he acquired no cause of action against the insurance company which by assignment could vest a cause of action in the service company; and, third, that there was neither allegation nor proof that the person with whom the service company dealt had any authority to bind the insurance company.

I. It becomes necessary to determine, first, what the insurance contract is on which the counterclaim is based, and whether or not it is something different than the written policy of insurance issued by the insurance company with all riders attached. There is some discussion in the briefs concerning an oral contract of insurance, and there is reference by appellee to a special contract of insurance. The counterclaim does not declare upon any other or different contract than the written policy issued by. the insurance company. It alleges: That the plaintiff solicited the defendant to purchase a policy of insurance insuring various workmen employed by the defendant in the transaction of its business. That at said time the plaintiff informed the defendant that for an additional premium, the plaintiff would issue a special policy insuring the president and vice-president.

"That relying on said statements, the plaintiff and defendant then entered into a written contract, a copy of which is attached to plaintiff's petition, in which written contract the plaintiff agreed to pay to the president and/or vice-president of the defendant company a certain sum per week if said president or vice-president were injured while traveling on business for the defendant company, and in addition thereto a certain amount mentioned in said policy for surgical and medical services. The part of said contract under which the plaintiff agreed to pay so much per week to the president and/or vice-president and to pay for surgical and medical services is as follows." Then fol-

lows a copy of the rider previously referred to in this opinion. "That in said policy so issued by the plaintiff, the president and the vice-president of the defendant company were classified therein as outside salesmen and the premium charge was made and collected thereon."

We think it clear from these allegations that the defendant in his counterclaim attempted to state no cause of action except one based upon the written contract issued by the insurance company. We may say, however, that if by any possibility it could be construed that a question of an oral contract of insurance was in this case, that the evidence was totally inadequate to establish any such oral contract of insurance; and that there was a total failure of proof to show any authority on the part of those with whom the service company dealt to bind the insurance company in any oral contract of insurance. We may eliminate from the case, therefore, any claim of any policy of insurance issued by the insurance company except the written policy introduced in evidence in this case.

II. Turning to the written policy actually issued by the company, we find that it was issued to the service company alone. Gholson was not a party to it. As to the terms of that policy, without setting out its somewhat elaborate provisions in extenso, suffice it to say that it is an ordinary employer's liability and workmen's compensation insurance policy and that by its terms the insurance company agreed, and only agreed, (1) to pay to any injured employee of the service company "any sum due or to become due from this Employer because of any such injuries, including death resulting therefrom, under certain Statutes cited and described in endorsements attached to this policy (an endorsement refers to chapter 70, title V, Code of Iowa 1924, relative to employer's liability and workmen's compensation), each of which Statutes is herein referred to as the Workmen's Compensation Law"; (2) to indemnify the service company against loss by reason of the liability imposed upon the service company by law for damages on account of such injury to employees; and (3) to defend in the name of the service company any suits or proceedings which may be commenced against it on account of such injury to employees.

We may, at the outset, eliminate the last two undertakings of the insurance company, as above enumerated, as not appli-

cable here. There has been no liability imposed upon the service company because of any injury suffered by employees for which it seeks to be indemnified, nor was any suit brought against it which the insurance company failed to defend. Moreover, those two covenants are clearly for the benefit of the insured alone, and if any liability arose thereon against the company, it would arise solely on behalf of the insured. Gholson could have no interest therein individually. And the insured makes no contention here that a claim accrued to it on its own behalf, but bottoms its right to recovery solely on the claim assigned to it by Gholson. No claim in favor of Gholson could possibly arise under either of these two covenants of the policy. This leaves for consideration only the first named undertaking. In it the insurance company agreed to pay the employees of the service company. It might be said that such provision was for the benefit of employees and they would have the right to sue thereon. But the insurance company agreed to pay to such employees only such sums as were due or would become due under the Iowa Workmen's Compensation Act. The law provides a somewhat summary means for the establishment of claims arising under that act. The employee is required merely to file a statement of his claim with the industrial commissioner who, by the provisions of the law, is given the sole original jurisdiction to establish claims under that act. *Gholson* did not file any such claim with the industrial commissioner, and it is conceded that it would have been useless for him to have done so, because since Gholson is the chief executive officer of the service company, a corporation, he does not come within the provisions of that act and is not classified as an employee under the terms of that act, Section 1421, Code 1931. Since the undertaking of the insurance company is to pay only the obligations of the service company to employees arising under the Workmen's Compensation Act, and since Gholson is not an employee under the provisions of that act and cannot acquire any claim under the provisions of that act, it is obvious that under the provisions of the policy which we have thus far examined, Gholson would have no right to maintain an action against the insurance company on this policy.

Does the addition of the rider change the situation? That rider does not refer to the policy proper, but only to the conditions to which the policy is made subject. Condition A, to which

the rider applies, has to do with the basis of premiums and provides that in the event the employer's business shall be changed or extended so as to increase the hazard to the employee, the rates applicable to the changed condition may be applied. It contains this provision:

"No premium charge shall be made upon the remuneration of the president, any vice-president, secretary or treasurer of this Employer, if a corporation, who does not personally supervise the manual or mechanical processes covered by this policy."

The rider goes no further than to modify that provision to the extent of making the remuneration of the president and vice president subject to a premium charge. Can it possibly be said that this enlarges the obligation of the insurance company and gives rise to any cause of action against it based on the policy? In the rider the company does not purport to assume any obligation which it had not previously assumed, and we have no hesitancy in holding that the rider does not make the company liable for the performance of a promise it has never made.

III. The trial court in its memorandum opinion calls attention to paragraph 7 of the policy, which defines the employees covered by the policy as all persons in the employ of the service company whose remuneration is included in computing the amount of premium charged to the service company. The trial court says that by the addition of the rider making the remuneration of the executive officers subject to a premium charge that they are thereby made employees within the meaning of the policy. This may be conceded. The trouble is that the insurance company agrees in the policy to pay to such employees only such amounts as may become due to them from the employer under the Iowa Workmen's Compensation Act; and under that act no sum can become due the president of a corporation employer. So that while it may be conceded that the executive officers become employees by the addition of the rider, they can have no claim against their employer under the Workmen's Compensation Act, and the undertaking of the insurance company is only to pay such claims as arise under that act. We would have to add to the agreement of the insurance company as contained in the policy, a promise to pay to employees not covered by the Workmen's Compensation Act the same schedule of payments they would receive if covered by the act. This

would require that we write an entirely new and quite radically different policy between the parties. That we are not at liberty to do. If an obligation to an employee was not due from the employer under the Workmen's Compensation Act, it was not due from the insurer under the policy. No other construction of the promise of the insurance company to pay is possible. In the case of Stiles v. Des Moines Council Boy Scouts of America, 209 Iowa 1235, 229 N. W. 841, a policy of employer's liability and workmen's compensation insurance had been taken out covering certain boy scouts doing a class of work at a camp. The premium, of course, was paid for their protection. This court, however, held that there was no liability for the payment to them of compensation because no liability for such payment was imposed by the Workmen's Compensation Act in a proceedings to which the insurance company was a party. See, also, Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N. W. 613, where compensation was denied to the president of a corporation employer who was killed while acting as a traveling salesman for the corporation in a proceedings to which the insurer was a party.

Gholson, as an employee of the service company, never acquired any cause of action against the insurance company on the policy contract issued by the insurance company in this case. Therefore, the service company acquired no such cause of action by assignment from Gholson.

The conclusions we have reached on the foregoing propositions necessarily dispose of this appeal. The trial court failed to find for the service company on the second count of its counterclaim. The service company has not appealed, nor does it now complain in argument of that failure. There is, therefore, no excuse for extending this opinion by entering into a consideration of the misunderstanding which obviously existed in this case as to the provisions of the policy and the effect of the rider, or of the reasons for such misunderstanding and the manner in which it arose, or whether it arose innocently or fraudulently. It is proper to say, however, that in the view of the court the allegations of the second count of the counterclaim and the evidence in support thereof fall far short of establishing in favor of Gholson a cause of action against the insurance company for damages on account of false and fraudulent representations.

It follows that judgment should have been entered for the

plaintiff on its motion. There was no question to be submitted to the trier of fact. The finding of the trial court that the insurance company was indebted to Gholson in the sum of $400 is not sustained by the evidence. The judgment appealed from herein is, therefore, reversed.—Reversed.

KINTZINGER, C. J., and ALBERT, MITCHELL, ANDERSON, PARSONS, and HAMILTON, JJ., concur.