JESSIE CRIGER, Appellee, v. MUSTABA INVESTMENT COMPANY et al., Appellants.

No. 44144.

DECEMBER 14, 1937.

REHEARING DENIED APRIL 11, 1938.

1112

Huebner & Huebner, for appellants.

Harold E. Wilson and Hugh E. Chance, for appellee.

SAGER, J.—No attempt will be made to set out in detail the many and varied activities of the decedent while in the service of the Mustaba Investment Company. There is substantially no conflict in the evidence, and it will be sufficient for our purpose to sketch in outline such facts as seem determinative of the question before us.

The defendant Mustaba Investment Company (which will hereafter be referred to as the Mustaba Company) was the owner of approximately twenty various farms, which were being operated by tenants who furnished the machinery and otherwise attended to the production of such crops as were raised thereon. Some of the buildings on the various properties were in need

of repairs and the decedent was employed by the Mustaba Company to attend to such repairs, and in addition to engage in certain other activities with reference to such farms. Some of these will be later pointed out.

At the time of his injury Criger had been employed by the Mustaba Company for a period of approximately four and a half years. The record discloses that during this period he was a trusted employee, but had no independent authority to act without consulting his employer except to a very limited extent. It was the habit of the officers of the Mustaba Company, when the matter of repairs was involved, to make an inspection of the buildings to be repaired and then designate the repairs to be made. From that time on Criger was authorized to hire enough men to do each particular job and to pay the men at not to exceed a fixed figure. He likewise had the right to discharge those he employed. Criger had no authority to sign checks. The men were paid by checks signed by an officer of the company. The deceased had no certain orders as to what he should do from day to day, and upon which farms he should be engaged; he sometimes looked after work on more than one farm at the same time. He kept in constant touch with his employers either personally or by telephone. On occasion he looked after the matter of settlement between the tenants and the owners to the extent of seeing that his employers got their proper share of the crops. The kind of crops to be planted was usually determined by the tenants and the owners directly; though it appears that on rare occasions. Criger was sent by the company to one or the other of the farms for that purpose. Prior to his employment by the Mustaba Company he had been a carpenter, and from thenceforward to the time of his death his whole time was taken up with affairs of the farms owned by that company. He had no other employers and no other employment. He gave his time exclusively to these farms, and had a fixed salary of $100 per month and house rent.

At the time of his death Criger was going from one farm to another in the discharge of his duties, and on the highway met with an accident which resulted in his death.

Much more might be added to indicate the activities of the deceased, in the way of making repairs upon buildings and fences, and general supervision of the farms to which his em-

ployment was directed, but the foregoing will be sufficient to give the outline.

On this state of affairs claimant alleges that her husband was not engaged in an agricultural pursuit within the meaning of the Compensation Law; but was in such position, by reason of the extent and variety of his duties and the character of the employer itself as an investment corporation, to come within the provisions of the statute.

As already pointed out, the defendants resisted this contention on the two propositions above stated. To these we direct our attention.

1. We have recently had occasion to examine the statutes and the authorities on a somewhat analogous question, in Trullinger v. Fremont County, 223 Iowa 677, 273 N. W. 124, and it will not be necessary to go over that ground again. Further examination of the authorities cited by the parties in the case before us, and additional investigation by us, has not persuaded us to alter our position as then announced.

It will be recalled that in the Trullinger case, supra, the injured party was an employee of Fremont County, acting under the direction of the county engineer in the operation of heavy road machinery, which at the time of his death was being loaned, in a sense, to aid farmers during the drought. In that case the injured servant had no other employer than the county which paid him his wages, except on the two occasions pointed out. He took no orders from the farmers and had no connection with them except in the limited way described in that opinion.

Here we have a different situation. In this case Criger had no employment during the four and a half years preceding his death except with and on the farms of the Mustaba Company. His whole time was engaged in the activities incidental to the upkeep of the improvements, and the cultivation, harvesting, and marketing of the crops grown thereon at the end of the season. Though he was a carpenter, as a servant of the Mustaba Company his whole time and attention were given to these farms and to nothing else. The question, then, is: Was he, within the meaning of paragraph 3, section 1361 of the Code, a person engaged in agriculture, in so far as the injuries he suffered were sustained while engaged in agricultural pursuits or any operation connected therewith? The conclusion seems inevitable that he was. It is difficult, on this record, to imagine how any other

position could be assigned to him, unless perhaps that the accident happened on the highway; or that the character of the Mustaba Company distinguished Criger's position with the company from that of the farm hand who is employed directly, either by owner or tenant of a single farm. The first alternative is out, because the statute expressly provides that the act shall not apply to one so engaged, whether the injuries are sustained ''on or off the premises of the employer.'' We see no reason for making the distinction suggested in the second proposition, and none is given to us in the briefs or in the authorities cited. In fact, such cases as have been brought to our attention by the parties herein from other jurisdictions negative such construction. Examples of this kind will be found in Shafer v. Parke, Davis & Co., 192 Mich. 577, 159 N. W. 304; Bates v. Shaffer, 216 Mich. 689, 185 N. W. 779; Keefover v. Vasey, 112 Neb. 424, 199 N. W. 799, 35 A. L. R. 191; Coleman v. Bartholomew, 175 App. Div. 122, 161 N. Y. S. 560; Guse v. Wessels (Neb.), 270 N. W. 665; Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124.

Our decisions referred to in the Trullinger case, supra, point to the same conclusion.

It is to be noticed that Sylcord v. Horn, 179 Iowa 936, 162 N. W. 249, 7 A. L. R. 1285, was decided while section 2477-m of the 1913 Supplement to the Code of Iowa was in force. That section was much like the statutes of a number of other jurisdictions. In its scope it was not nearly so broad as the present statute. Said section 2477-m declared that the Compensation Law ''shall not apply to any household or domestic servant, farm or other laborer engaged in agricultural pursuits, nor persons whose employment is of a casual nature.'' Now by enactment of the Fortieth Extra General Assembly, H. F. 42, sec. 1 (see Code, §1361), the scope of this law is greatly extended. It is not confined to agricultural laborers, but excludes *all persons engaged in agriculture or in agricultural pursuits, or any operations connected therewith.* (Italics ours.)

We cannot avoid the conclusion that the nature of the employment of Criger brought him within the exclusion of said section 1361 of the Code. If this construction of the law seems harsh, the remedy is by appeal to the legislature. This court may not concern itself with the wisdom of statutes so long as

they are enacted by the legislature within the scope of its constitutional powers.

2. What has gone before makes it unnecessary that we examine at length the contention with reference to the alleged representative capacity of Criger. Counsel seem to lay some stress on the provisions of section 1383 of the Code of 1935. Cases are cited from other jurisdictions which are believed to support defendants' construction of that statute. Both section 1383 and most or all of the cases cited have to do with the question of notice of an injury and the failure to give notice unless the employer "or his representative shall have actual knowledge of the occurrence of an injury." That question is not before us. A reading of this record does not lead us to the conclusion so confidently pressed upon us by defendants' counsel,—that Criger was in a representative capacity and, as a consequence, was excluded by the further provisions of section 1421, paragraph 3, subd. d., of the Code, which defines who are not deemed "workmen" or "employees." The language of that paragraph is: "A person holding an official position, or standing in a representative capacity of the employer * * *." Since it is not necessary to do so, we refrain from pointing out the testimony which might seem to warrant the conclusion that Criger did not stand in a representative capacity within the meaning of that law.

Because of the views expressed on the right construction of section 1361, we hold the trial court was in error, and that its decision should be, and therefore it is, reversed.—Reversed.

HAMILTON, C. J., and DONEGAN, PARSONS, STIGER, and RICHARDS, JJ., concur.

ANDERSON, KINTZINGER, and MITCHELL, JJ., dissent.