W. BRUNSKILL et al., Appellees, v. FRANK D. WALLACE et al., Appellants.

No. 43770.

DECEMBER 14, 1937.

Gantt & Coffman, for appellants.

L. R. Ball and Klay & Klay, for appellees.

SAGER, J.—In brief outline, plaintiffs' petition charges that on the 8th day of November, 1934, the defendant F. B. Wallace (who will hereafter be referred to as the father) conveyed to his son and codefendant, Frank D., the father's interest in certain real estate. This interest consisted of one-third of certain property derived through the death of the wife and mother of these defendants. The plaintiffs allege that at the time of this transfer the father was indebted to the bank in a substantial sum, and was wholly insolvent; that the conveyance was made for the express purpose of hindering and defrauding creditors, a purpose known to the son at the time he accepted the deed.

Other parties were made defendants, but their interests need not be considered herein.

The answer of the defendants, while admitting the execution of the deed, was in effect a denial. In another division of the answer it was claimed that the transfer was made in satisfaction of a debt claimed to be owing to the son. A third division sets up in detail the source from which it is claimed arose a debt from the father to the son in excess of the value of the property conveyed.

On the trial the court found the transfer to have been in fact fraudulent and for the purpose of hindering creditors, and set aside the deed except as to certain homestead interest. This being an equity case, we have been under the necessity of examining the record in full, and careful attention to the testi-

mony upon which the trial court acted persuades us that the decree entered below was correct and should not be disturbed.

While the briefs of the parties contain many citations to sustain well-established and uncontroverted propositions of law, the case is strictly one of fact, and no good purpose would be subserved by analyzing at length either the cases or the testimony.

Among the propositions urged by defendants is one to the effect that the plaintiffs, having called defendants as witnesses, were bound by the statements made, implying the further thought that the court might not use its judgment and common-sense in determining whether the testimony of the defendants was credible or not. The rule of law that one who calls a witness may not impeach him in the ordinary way calls for the citation of no authority in its support. Neither can there be any question that if the testimony appears to be inherently improbable or lacking in credit, or made to appear so by the testimony of other witnesses, the court is not bound by the language in which the witnesses frame their answers. In any way in which the testimony in the cause before us is viewed there is intruded upon the consciousness the conviction that the transaction was what the court found it to be, and not what the defendants claim it was.

From the record upon which it is sought to rely as a basis for support of this deed, every element of sound or even busi-ness sense is absent. One item of alleged consideration was a half of the profit claimed to have been derived by a sale of an ice business ten or twelve years before. There is almost a total absence of written record in all the transactions involved in the testimony. There is confusion and uncertainty in statement, and incredible deductions sought to be made by defendants. For example, defendants claim the son borrowed $3,100 from his mother, giving her no note or other evidence of debt to prove the loan. He says he loaned this money, or nearly all of it, to his father, in bills, taking no writing to show the trans-action. Nothing was said as to how long the father wanted the use of the money, nor as to how long he could have it. He was to pay the same rate of interest that the bank charged, which the son supposed was eight per cent. The son claims to have had this money in a bank box "pretty close to a year I should judge, I don't remember." Pursuing this inquiry a

little further, it appears from the testimony that after lending the father this money the son had some money left in the bank, but he did not remember just how much. He could not remember where some of the money came from, but said that at times in the ice business he made "pretty good money." His reason for keeping the money in this condition is novel, to say the least. He said occasions arose where he had to have money "quick," and this is one of the reasons:

"I played quite a few jack pots. They don't take checks in a gambling joint. You have to have cash to play, that is the reason why I kept it there, to go in and play, * * *."

Throughout the testimony there is vagueness and uncertainty to the extent that it is hard to imagine how the court could have taken the testimony of defendants seriously. This sample, taken from about half a page of the testimony of the son, omitting certain portions not necessary to be preserved to give the idea we are seeking to convey, will give a tolerably accurate notion of what the trial court had to deal with:

"It seems to me like I saw only two checks, I don't remember. * * * I think I cashed one or two, whatever they were, I don't remember, but I think it was at the State Bank at Hawarden; whether there were three I don't remember, or maybe I just cashed one there, I don't remember. * * * it come to a total of around I think forty-two hundred or something; it might have been two, I don't remember, I couldn't say. It seems to me * * * if I remember rightly. I don't know that I had a checking account in Ring's bank at the time. I know I got the money * * * and put it in Toy's (bank), if I remember right. I think that I deposited the check * * *."

One other example, omitting again parts of the record, ought to satisfy. After introducing a subject upon which he might well be supposed to have some information, he comments:

"I couldn't say. * * * I think the land" cost a certain figure. "I put in my resignation, I think * * *. I think he told me * * *. I think that is it, I am not positive something in there * * *. I couldn't be positive. I think sold out in August * *.*. We were there a couple of years, I think, or three years, I couldn't be positive."

The father's testimony is lacking in plausibility almost to the same degree as is the son's. He goes on, among other things, to tell how he kept the bills that he got from his son in fruit jars about the house and in the cellar, keeping no track of the amount that was taken out, and disclosing an indifference to the most ordinary promptings of prudence.

Defendants seek to argue that plaintiffs failed in establishing either that the plaintiffs had a judgment, while admitting that an execution was returned to the clerk's office unsatisfied, or that the father owned the real estate conveyed, although it was not denied in the pleadings. This, with the assumption or admission of ownership carried through the whole record, requires no more to be said on this subject.

The deed in controversy was executed three days after the death of the mother, from whom the father derived his title. At that moment he was indebted to the bank, was insolvent. We see no way in which the court could have escaped the conclusion it announced.

It follows that the judgment of the trial court is affirmed. —Affirmed.

HAMILTON, C. J., and ANDERSON, DONEGAN, MITCHELL, RICHARDS, and KINTZINGER, JJ., concur.