HELEN DANICO, individually and as next friend of Robert Lee Thomas et al., Appellee, v. DAVENPORT CHAMBER OF COMMERCE et al., Appellants.

No. 45941.

SEPTEMBER 29, 1942.

Cook & Balluff, of Davenport, for appellants.

Lane & Waterman and William W. Brubaker, all of Davenport, for appellee.

HALE, J.— Application for arbitration was filed September 5, 1940, to which was filed answer and denial to answer by way of reply. Defenses relied upon are, that the death did not arise out of and in the course of decedent's employment; that decedent was not a workman or employee of the Davenport Chamber of Commerce within the meaning and intent of the compensation act at the time of his death, but that he was holding an official position or was standing in a representative capacity to said employer; and that decedent was intoxicated at the time of his death and such intoxication was the proximate cause of his death. Hearing was had before the deputy commissioner, and, on petition for review, before the industrial commissioner, who, on May 6, 1941, filed his opinion and award confirming the order of the deputy commissioner in favor of the claimants, and on appeal to the district court there was filed, on July 17, 1941, judgment and decree approving and affirming the order of the industrial commissioner. From such judgment and decree both the defendant and the insurance carrier appeal to this court.

The decedent, Henry Arthur Danico, was employed by the Davenport Chamber of Commerce as secretary to the convention bureau thereof. In a general way, his duties were to procure various conventions for the city of Davenport. The Chamber of Commerce is an Iowa corporation devoted to promoting the civic, industrial, and commercial welfare of the city of Davenport, and is composed of business and professional men in that city. The management of the affairs of the Chamber of Commerce is entrusted to a board of directors. Committees are appointed, each of which is assigned immediate supervision over some one of the activities. The committee in charge of procuring conventions consists of several members of the Chamber of Commerce, who generally act through a subcommittee or executive committee of three. For the purpose of solicitation and traveling and other matters connected with the procuring of conventions, this subcommittee hired a full-time salaried employee, determined his salary, which in this case was $200 per month, and also determined the conditions of employment, and his actions were subject to approval. At the time of his death, Mr. Danico occupied that position. Evidence showed that he was expected to devote his full time and efforts to the work in

order to induce organizations to convene in Davenport and to see that delegates and visitors to those meetings were well treated and departed with a favorable opinion of the city. It was understood that he was expected to improve his acquaintanceship with persons who might help him to secure conventions, and in order to do so, and for travel, he was permitted to have an expense account.

In line with his duty, Danico had solicited the Iowa Bakers' Association and the Allied Trades of the Baking Industry, manufacturers and distributors of bakery equipment and supplies. The latter had a state organization known as the Iowa Group of the Allied Trades of the Baking Industry, of which H. C. Simmons, of Davenport, was president. He and Earl Weaver, his associate, were representatives of this group to the Iowa Bakers' Association, and also were members of the board of directors of that organization. The decedent, being acquainted with Simmons, had asked him to help in obtaining other meetings of the association for the city of Davenport. In pursuance of the plan to secure the convention, the board of directors of the Iowa Group decided to hold an all-day outing in the Tri-Cities on August 3, 1939, and to have as their guests the members of the Iowa Bakers' Association. Simmons solicited Danico's help in making arrangements for the outing, and in behalf of the Chamber of Commerce to furnish tickets and badges, as was customary at such meetings. Following a custom, Simmons, as president of the Iowa Group, decided to hold a reception at the Blackhawk Hotel in Davenport on the evening of August 2d, preceding the meeting on the following day. As shown by the evidence, decedent made arrangements for this reception, and as a part of the entertainment Simmons planned to invite the guests of the reception to a ride on the Mississippi River in his motorboat, depending upon the number of guests at the reception and the number that he could accommodate. In making these plans, he was assisted by Danico. Badges were provided by Danico and turned over to Simmons, who invited him to the reception. It was expected by his employer that Danico would attend receptions and social activities in the advancement of his work. At about 9 o'clock, Danico arrived at the reception. There were served to the guests liquors, of which Danico partook

to some extent, but the testimony of witnesses is that he was not intoxicated throughout the evening. The evidence shows that there were discussed at the reception at various times the advantages of holding conventions in Davenport. Since the attendance was not large, those present accepted Simmons's invitation for a boat ride, and the guests left about 10:30 and proceeded to the river to Simmons's motorboat. Danico had not previously been on this boat.

This boat was 26 feet long, 8 feet 3 inches in width at the widest part, with a cabin, and with an open deck which extended from the bow backward to the windshield of the cabin. The rear deck was open. On each side of the boat, extending from the outer edge of the hull to the side wall of the cabin, was a passageway, called a catwalk, 8 inches wide, running from the foredeck to the rear deck. These catwalks had a slight slope from the foredeck to a point opposite the rear end of the cabin side walls, and at the latter point the walks sloped downward abruptly to the level of the rear deck. Fastened at the outer edge of the catwalk was a half-inch molding, or rail, to prevent persons from slipping over the edge of the boat. On the roof of the cabin and about one foot in from each of the side walls there were hand-railings which ran parallel the length of the cabin, the upper part of which railings were about 4 inches above the cabin roof. Each handrail was equipped with U-shaped clamps fastened to the upper rod of the handrails with the open end of the clamps facing upward, in which was laid, on one side or the other, a pike pole about 6 feet long, lying loosely in the clamps. The pike pole when in the clamps is immediately above and parallel with the handrails. The roof of the cabin was about $2\frac{1}{2}$ feet above the surface of the catwalks.

The boat started about 11 p. m. The water was calm and the night was still. About 11:30, when the boat was proceeding at a speed of about 8 m. p. h., the decedent, who had been standing on the rear deck looking forward and talking to a Mr. Barr, turned and stepped up on the catwalk on the left side of the cabin and walked toward the front end of the boat. When he reached the foredeck, he held to the handrailing with one hand, knelt down and tapped on the windshield to attract the attention of Simmons, who was inside the cabin at the wheel. Simmons

directed Danico to return to the rear deck and the latter started to comply. Walking back on the catwalk, he reached the point where the walk sloped abruptly downward opposite the rear of the cabin wall, and witnesses heard the pike pole clatter on the roof, and they saw and heard the decedent trying to regain his footing. He was unsuccessful, and fell into the river and was drowned. His body could not be seen, but the pike pole and his hat were floating on the surface of the river.

The question of intoxication, which was division III of defendants' defense, was not argued in their brief, and there was sufficient evidence before the commissioner that decedent was not intoxicated to sustain his finding, so that there need be no further consideration of this question.

I. Appellants claim that the death of decedent did not arise out of and in the course of his employment, citing Christensen v. Hauff Bros., 193 Iowa 1084, 1089, 188 N. W. 851, 853; Griffith v. Cole Bros., 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923; Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916; and Enfield v. The Certain-teed Prod. Co., 211 Iowa 1004, 233 N. W. 141, none of which we think is decisive of the facts in this case.

In citing from Christensen v. Hauff Bros., supra, appellants quote the following from that case:

"The correct reasoning is: There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of a hazard connected with the employment."

In that case the decedent was not only negligent in attempting to board a train to return to his home from a business trip, but he chose the dangerous way in attempting to get on at a place not provided for passengers. The court, in eliminating the question of willful misconduct and reciting that freedom from negligence was not a requisite to recovery, held that there was nothing peculiar to the hardware and implement business suggesting the rash venture which sacrificed Christensen's life, and there was no causal connection between the conditions under which this work was required to be performed and the resulting injury. Under the facts in that case, the court held that what he did was not necessary. We do not think the circumstances of

that case will assist us in the instant case. In the present case, Danico was engaged in the occupation for which he was employed, at the place he might reasonably be expected to be; if, in ignorance of the situation or through carelessness, he attempted to pass from one end of the boat to the other, he was still in the performance of his duty, as one of the party on the boat. No one could say that he could not move about the boat as is customary on excursions of this kind. Appellants do not argue that every minute of the time decedent was on the boat he must be engaged in furthering the interests of his employer. But while on the boat and in the course of the trip, he was actually engaged in the character of work for which he was employed. We are of the opinion that, because of the nature of his employment, Danico was rightfully a member of the excursion party, and as such he was subject to the hazards that pertain to such trips and under such conditions. There was a causal connection between the conditions under which his particular kind of work was performed and the resulting injury. The evidence shows that these social occasions were such as he was expected to and did attend in presenting the interests of his city and of his employer to the persons who controlled or influenced the sort of conventions he was endeavoring to secure for his community.

Griffith v. Cole Bros., supra, merely holds that in the case of an employee injured by lightning while he was in the course of his employment, the injury did not arise out of the employment. While he was within the sphere of his employment, and although at the time of the injury he was not directly performing any part of his daily task, yet the nature of the injury was not such as would arise out of the employment, being entirely unconnected therewith and not growing out of it. We do not think the facts or the ruling in that case apply here.

The same may be said of Pace v. Appanoose County, supra, which was decided on the theory that the claimant was an independent contractor, and therefore not entitled to the benefits of the Workmen's Compensation Act.

Enfield v. The Certain-teed Prod. Co., supra, was cited by appellants in relation to an injury to an employee who was riding upon an elevator which he had been expressly forbidden to use. Under the circumstances as shown in that case, the court

held that he was not in the course of his employment. There was no such showing or claim made in the present case. There was no express direction that Danico should not attend this particular function. Much of his work was necessarily and reasonably expected to be done on his own initiative, but he was certainly not forbidden to be present at the party on board the boat.

None of the cases above referred to we think will sustain the appellants' position under the facts of this case.

Subdivision 6, section 1421, Code of 1939, defines the words "personal injury arising out of and in the course of the employment" and states that they shall include injuries to employees whose services are being performed on, in, or about the premises which are occupied, used, or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business. From the nature of the employment, shown by the evidence to require the decedent's presence at various points within and without the state of Iowa, and at social gatherings and meetings such as took place on the evening when the fatal accident occurred, the injury sustained by decedent was such as might and would arise out of the nature of the business in which he was engaged. In the language of the statute, it arose out of that particular form of work. And this appears to us to be our holding in our former cases.

Walker v. Speeder Mach. Corp., 213 Iowa 1134, 1149, 240 N. W. 725, 731, was an action brought to recover for fatal injuries sustained by decedent in Pittsburgh, Pennsylvania. Walker was demonstrator and expert repairman and subject to call to go to any point to demonstrate or repair a machine. Leaving his hotel in Pittsburgh to procure a meal, he was injured by and afterward died from a collision with an automobile. The court held that the injury arose out of and in the course of his employment, and said that he was waiting there at the hotel in Pittsburgh to do the work of his employer, and while waiting it was incumbent and necessary that he sustain himself with food; that he was in the act of passing between his hotel and the place where food was to be obtained when the accident occurred; that the injury arose out of the employment; citing Pace v. Appanoose County, supra, and Rish v. Iowa Portland Cement Co., 186 Iowa

443, 170 N. W. 532. See, also, Bushing v. Iowa R. & L. Co., 208 Iowa 1010, 1018, 226 N. W. 719, 723, wherein it is said an injury occurs in the course of the employment when it is within the period of the employment, at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An injury in the course of employment embraces all injuries received while employed in furthering the employer's business, and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work.

In the case of Fintzel v. Stoddard Trac. & Equip. Co., 219 Iowa 1263, 260 N. W. 725, the claimant, a salesman, was injured while hunting with the son of a possible customer, and it was held that an injury arose out of and in the course of employment when the employee was performing work of a social nature necessarily incident to the purposes for which he was hired. And there was evidence in the instant case to show that if Danico thought he would advance the interests of his employer by accepting the invitation to the boat ride, he would then be acting within the scope of his employment and it would be his duty to go. See, also, Griffith v. Norwood White Coal Co., 229 Iowa 496, 294 N. W. 741; Fickbohm v. Ryal Miller Chevrolet Co., 228 Iowa 919, 292 N. W. 801; Wallace v. Rex Fuel Co., 216 Iowa 1239, 1248, 250 N. W. 589, 593, and cases cited and referred to therein. In the latter case, the court, in its conclusion, states:

"As suggested in some of the foregoing cases, it must be said that the deceased in the case before us was injured at the very place he was expected to be and while performing the precise service he was expected to perform. That he was negligent, grossly so, may be conceded. This, however, will not defeat recovery."

See, also, Sachleben v. Gjellefald Constr. Co.; 228 Iowa 152, 290 N. W. 48.

The general rule as to the injury arising out of and in the

course of the employment will apply here, and also the rule that negligence does not preclude recovery. See Marley v. Johnson & Co., 215 Iowa 151, 159, 244 N. W. 833, 85 A. L. R. 969.

We have discussed together these two requisites to recovery for compensable injuries, and our conclusion is, and we hold, that decedent at the time of his death was in the line of his duty, doing the work for which he was employed, and that the injury arose out of such employment and while he was so employed, that is, in the course of his employment.

II. Appellants next contend that the district court erred in affirming the decision of the industrial commissioner which held that the decedent was not standing in a representative capacity to his employer at the time of his injury and death. Appellants argue that Danico was hired to secure conventions for the city of Davenport, which would indirectly result beneficially to the merchants and tradespeople of the city. He was given a certain amount of money to spend for this purpose and was required to operate within this budget, but other than that Danico operated practically without restrictions. He could go where he wanted to secure these conventions; his time was his own; he could operate according to his own plan to induce various organizations to visit Davenport, and he could make various commitments and contracts concerning the furnishing of badges, tickets, music, auditorium, and other inducements which to him might seem advisable.

We do not think the evidence goes quite to the extent that the appellants claim in showing the discretionary powers of Danico as a soliciting agent. Necessarily, he could not be tied to any particular set program. He had the right to make certain concessions. There is no evidence that he went beyond the powers thus given. In some cases he did not proceed to the extent he was authorized to go, but he was under the supervision of the convention committee. In work of that kind there could be no exact restriction or direction of his movements. The concessions or inducements that he was authorized to make, though different, are not greater than those permitted many salesmen. Much had to be left to his discretion as to providing free badges and tickets and other conveniences for conventions. These matters would depend upon the kind of meeting. He

was not a member of the convention committee nor is there evidence that he was a member of the Chamber of Commerce. He followed the general policy outlined, but he was within general limitations, for he could not go beyond the approval of the committee. In addition, he stood in the nature of a host, and part of his business was to see that the conventions when in session were taken care of so as to produce a favorable impression of the community. The evidence does not show that he had the right to employ or discharge any employee. The evidence does show that he never asserted any such right.

Section 1421, paragraph 3, subdivision $d$, excludes a person holding an official position or standing in a representative capacity of the employer. Our later cases show in what manner the claimant must be a representative. Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N. W. 613, cited by appellants, has reference to the president of a corporation. Also cited is Hamilton v. Farmer Canning Co., 220 Iowa 25, 261 N. W. 506. In that case the claimant was at times in sole charge of the canning factory; he received a salary and 15 per cent of the proceeds; he signed contracts and employed all help, with the right to hire and discharge such employees; he issued checks and exercised general supervision. It is clear that the decedent in this case had no such powers. Pattee v. Fullerton Lbr. Co., 220 Iowa 1181, 263 N. W. 839, also cited by appellants, is not at all similar to the case at bar, since the decedent in that case was the general manager of a lumberyard, determined the credit of customers, dispensed funds, and signed checks. The claimant's decedent in the present case had not the broad executive powers such as would be necessary for a person to represent or take the place of his employer.

We are satisfied that the evidence sustains the industrial commissioner and the district court in holding that Danico was not occupying an official position or was not acting in a representative capacity in the work in which he was employed. His duties were ministerial rather than executive, and, while he had some powers, those powers were limited. He comes within the rule of Schroyer v. Jasper County, 224 Iowa 1391, 279 N. W. 118.

The decedent was not acting in a representative capacity, but as an employee only, and therefore entitled to compensation.

328

Under the record there was competent evidence to sustain the commissioner's finding in the case, and we hold that the ruling of the district court should be affirmed.—Affirmed.

WENNERSTRUM, C. J., and STIGER, OLIVER, BLISS, SAGER, MITCHELL, and GARFIELD, JJ., concur.