MINNIE B. DEWEY, Appellee, v. NATIONAL TANK MAINTENANCE CORPORATION et al., Appellants.

No. 46190.

April 6, 1943.

Miller, Huebner & Miller, of Des Moines, for appellant.

D. Cole McMartin, of Des Moines, for appellee.

MULRONEY, J.—Claimant, Minnie B. Dewey, alleged in her petition for workmen's compensation that she was employed to do office work and make collections for her employer, the National Tank Maintenance Corporation. She alleged that while engaged in making a collection at the direction of her employer she suffered an injury in an automobile collision. Her employer and its insurance carrier admitted the injury, but denied she was an employee and alleged that the "claimant was a person holding an official position or standing in a representative capacity of the defendant, National Tank Maintenance Corporation; that at the time said injury was sustained the defendant, National Tank Maintenance Corporation, was a corporation organized under the laws of the State of Iowa and at said time and prior thereto the claimant held the official position of secretary and member of the board of directors of said corporation."

The deputy industrial commissioner, as sole arbitrator, the industrial commissioner, and the district court found claimant was not holding an official position or standing in a representative capacity of the defendant. The district court reversed that part of the decision of the industrial commissioner awarding claimant compensation for not to exceed three hundred weeks and remanded the case to the industrial commissioner for the purpose of taking further testimony as to the extent of claimant's disability. Claimant has not appealed so we will here

consider the single issue raised by the answer as to whether claimant was an employee within the meaning of the workmen's-compensation act.

Section 1421 3($d$), Code, 1939, provides as follows:

"3. The following persons shall not be deemed 'workmen' or 'employees': * * *

"$d$. A person holding an official position, or standing in a representative capacity of the employer * * *."

The National Tank Maintenance Corporation is an Iowa corporation with its principal place of business in Des Moines, Iowa. It is engaged in selling service to municipalities in Iowa and adjoining states whereby the corporation undertakes to paint and repair municipal water tanks. Service contracts are negotiated with automatic renewal clauses and with varying prices, depending upon the size, condition, and age of the tank. The company maintains a force of men that do the actual repair and maintenance work.

The articles of incorporation designate Paul N. Kingsley as president and treasurer and K. L. Kingsley as secretary, "Until the next annual meeting of the Board of Directors." No meeting of the board of directors was ever held. The articles further provide that future officers shall be stockholders and elected by the board of directors. No stock was ever issued. K. L. Kingsley, the secretary, and daughter of Paul N. Kingsley, resigned as secretary by written resignation dated February 1, 1938. In the annual corporation reports signed by the president and filed in the office of the secretary of state, the name of claimant appeared as secretary in the years 1937, 1939, and 1940. Mr. H. R. McMahan was designated as vice-president in the articles of incorporation, but in all later annual reports the president's wife, Dorothy L. Kingsley, was listed as vice-president. The evidence showed that Paul N. Kingsley considered himself "the whole corporation." He testified that he was in direct charge of the corporation; that he made out the corporation reports; that he "felt like I was the board [of directors] itself;" that he selected his own appointees to fill out the panel of officers in the corporation; and at least for the first report he did not even consult the ones he appointed.

However, claimant knew her name was included in corporation reports for the evidence showed she typed some of the reports from the pencil notations placed on them by Mr. Kingsley.

The evidence further showed that Minnie B. Dewey first went to work for the corporation in 1936. She took care of the mail, and, although she did not take dictation, the president of the corporation and the owner of all the stock, Mr. Kingsley, instructed her what to say in the letters she typed. After about four years her salary was increased and she spent more of her time traveling over Iowa, selling the service to municipalities. Although she and Mr. Kingsley negotiated all of the contracts during the last two years before her injury, the record shows that other salesmen had been employed to negotiate and sell this service during prior years.

Many exhibits were introduced showing her signature upon letters written to the insurance carrier and customers, upon a settlement agreement involving a substitution of securities with the insurance carrier, and upon contracts for the company's service. In each instance her signature appeared under the corporation name as secretary. Claimant testified that she signed some of the letters as secretary to Mr. Kingsley, the president, and he did not testify to the contrary. She also testified that she signed the other papers and contracts, in the manner they were signed, upon the instructions of Mr. Kingsley.

Mr. Kingsley testified that he was in direct charge of the corporation; that claimant did most of the office work; that claimant spent time on the territory making collections and selling the service; and that she was paid a commission on her sales in addition to her salary.

There was further testimony to the effect that the salesmen, including claimant, carried a sales manual, furnished by the corporation, containing specific separate items necessary in repairing and maintaining a tank, with a price for each operation. Mrs. Dewey testified she never varied from this price list in selling the service and if there was something unusual that came up in the job she would consult Mr. Kingsley before quoting a price.

I. Our first inquiry is whether or not claimant held

an "official position" within the meaning of section 1421, paragraph 3 (*d*). Under the record in this case it is clear that claimant was not the secretary of the corporation, because she was not designated as secretary in the articles of incorporation and she was not elected to that office in the manner provided in the articles of incorporation. It is also clear that she could not qualify as secretary of the corporation for she held no stock. Claimant therefore held no "official position" with the corporation. It matters not that she signed her name as secretary upon letters, contracts, and other papers. We are not dealing with the rights of third persons. We need not examine any of her acts. This action is against the corporation itself.

When the corporation defends upon the ground that she held an official position and was therefore not an employee, it is incumbent upon the corporation to prove she was an officer duly elected under the powers granted by the articles of incorporation. The burden is not sustained by proof of selection as secretary by an officer who had no power to select, and proof of a holding out to third persons that she was the secretary of the corporation. In fact, all evidence bearing upon the kind of work she did is immaterial. We are here dealing with a status that could only be created in the manner provided for its creation. Upon like reasoning, we decided, in the case of Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 970, 218 N. W. 613, 615, that if the officer's status was created, the performance of work of an ordinary employee by the officer would not make the officer an employee under this statute. There Justice DeGraff used the following pertinent hypothetical case to illustrate this point when he said:

"A bank president may, under some circumstances, be called upon or be willing to perform the duties of a janitor or night watchman. He still would be holding an official position, no matter what duties he performed; and, if he were injured while performing the duties of a night watchman, he would be without the scope and intent of the law."

With equal force, we state that if the janitor or night watchman is called upon to perform the duties of the bank president, he holds no official position, by reason of such per-

formance, that would prevent his being an employee under this statute.

██ II. Appellants next contend that claimant stood "in a representative capacity of the employer." Standing in a "representative capacity" must mean something more than the ordinary agent of the employer. Corporations only function through the action of officers and agents. In a sense all agents are representatives of the corporation. Many salesmen for corporate employers have authority to complete sales contracts that bind the corporations. Obviously, the statute was not designed to mean that all representatives of a corporation would be barred from the status of an employee. Bouvier's Law Dictionary, Rawle's Third Revision, defines the word "representative" to mean, "One who represents or is in the place of another." We think the legislature used the word here in the second meaning or in the sense of one who stands in the place of an employer— the employer's alter ego, as the headnote writer stated in the case of Hamilton v. Farmer Canning Co., 220 Iowa 25, 261 N. W. 506. The representative of the employer must be one who is clothed by the employer with all the powers the employer can exercise so that the representative stands in the place of the employer. In the Hamilton case the employer, J. LeRoy Farmer, clothed the claimant with full managerial powers over one of his four canning factories. The claimant had complete supervision over the factory, with power to hire and discharge factory employees and write checks in payment of the factory obligations. Farmer only made visits to the factory. We held the claimant there stood in a representative capacity of his employer and could not recover compensation for an injury he suffered in the factory. In the Hamilton case, however, there was no question of the right to delegate the power, for Farmer's right to give his agent power was unlimited. Here, where the corporation is the employer, the right to confer power is limited by the articles of incorporation. We said, in Dempster Mfg. Co. v. Downs, 126 Iowa 80, 83, 101 N. W. 735, 736, 106 Am. St. Rep. 340, 3 Ann. Cas. 187:

"The corporation is created by the adoption of the articles. These form the very basis of its existence."

The articles of incorporation contain no provision which would give the officers the right to grant such broad powers to an agent that he would stand in the place of the corporation. The articles provide that the affairs of the corporation shall be managed by a board of not less than three nor more than seven directors, and though there is the general power to appoint agents to carry on its business, there is the restriction that all debts, deeds, mortgages, and contracts, and other instruments in writing, shall be executed by the president or vicepresident in the corporate name. An officer of a corporation has no implied authority to delegate powers, which involve the exercise of discretion, to other agents. See 19 C. J. S. 101, section 759, where the rule is stated as follows:

"In accordance with the general law of agency, officers and agents of corporations cannot delegate powers which involve the exercise of judgment and discretion, and which it is the intention of the corporation should be exercised by them in person * * *."

Claimant's employer was the National Tank Maintenance Corporation. Although the National Tank Maintenance Corporation has no outstanding stock, it is a corporate entity. There is no prohibition in the articles of incorporation against the commencement of business as a corporation until stock is issued. Section 8359 of the 1939 Code provides that the corporation may commence business as soon as the certificate is issued. See, also, Johnson v. Kessler, 76 Iowa 411, 41 N. W. 57.

The president of the corporation testified that he was in direct charge of the corporation. But he could not, under the particular articles of this corporation, clothe any agent with broad enough powers to make that agent stand in a representative capacity of the corporation as we define that term as used in section 1421, paragraph 3(d), of the 1939 Code. All that we said to show that claimant was not an official is just as pertinent to show that claimant did not stand in a representative capacity. If Mr. Kingsley sought to do business by means of a corporation sole, his power to act is circumscribed by the articles of incorporation. Mr. Kingsley as a personal employer

could, by a broad grant of power delegated to an agent, make that agent his representative, and it would be proper to show the agent's duties and his actions in order to show that he had the broad grant of power. But Mr. Kingsley as the president of the corporation, the artificial person whose creation he procured, cannot show the agent's duties and actions by way of defense in this action when it is clear that he could not, under the articles of this corporation, confer upon an agent powers that would constitute the agent one who stood in the place of or in a representative capacity of the corporation. This was settled in the case of Schroyer v. Jasper County, 224 Iowa 1391, 1395, 279 N. W. 118, 121. There it was asserted that Schroyer occupied an official position in that he was a road patrolman and not an employee of the county. Since the evidence did not show any statutory appointment or any acceptance or qualification, this court held he was not a patrolman and that he held no official position. It was also asserted that, even if he were not a patrolman, he stood in a representative capacity of the county. Justice Richards, who wrote that opinion, reviewed the statutes to the effect that construction and maintenance work on roads and bridges were to be performed under the direction and immediate supervision of the county engineer. But it was contended that the acts the claimant performed, such as the buying of repair material and the hiring of men, showed that he appeared "to have been exercising his own discretion, acting in a representative capacity of the county in at least some particulars." In reply to this contention Justice Richards stated:

"If we were to agree with appellant, yet no mere appearance of things would establish that Schroyer did stand in a representative capacity of the employer, the county, unless additionally it be shown that he *had authority* to act for the county, and to bind the county as its representative. Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N. W. 613; Hamilton v. Farmer Canning Co., 220 Iowa 25, 261 N. W. 506. If he had such authority it must have been derived from some lawful source. But no such source can be found. That there was no statutory source of authority is quite evident. That neither the board of supervisors nor the county engineer, the officials in

whom was vested the duty, power, and authority to maintain these roads, could delegate any of their powers in any manner, except as such delegation of powers might relate to duties merely ministerial in character, is well established.''

The articles of incorporation of a private corporation are what the statutes are to a municipal corporation. We found no source of power in the Schroyer case, under the statutes, to warrant a delegation of authority to an agent sufficient to establish that the agent stood in a representative capacity within the meaning of the statute. So, too, we find in this case no source of power, under the articles of incorporation, to warrant a delegation of authority to an agent sufficient to establish that claimant stood in a representative capacity of the employer corporation.

III. Counsel for appellants argue that because certain communications were addressed to the insurance carrier which indicated that claimant was the secretary, it was thereby misled, and as an innocent third person it was damaged because it did not include her as an employee in the pay-roll audits upon which premiums were based. This argument is answered by again pointing out that this action is against the employer, the National Tank Maintenance Corporation. The insurer merely insures that company's liability. The insurer can assert no defense that the company could not assert.

IV. What has gone before renders it unnecessary to examine the evidence with respect to claimant's duties and actions. We refrain from pointing out the evidence which would, after all, warrant a conclusion that claimant performed the ordinary duties of an office manager and saleswoman, acting upon the instructions of her employer, in the person of Mr. Kingsley, the president of the corporation, with no right to exercise her own judgment in the important matters of the corporation's business.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.