HELEN BREWER et al., appellees, v. CENTRAL CONSTRUCTION COMPANY, a copartnership, and EMPLOYERS MUTUAL CASUALTY COMPANY, appellants.

No..47660.

(Reported in 43 N.W.2d 131)

800

June 13, 1950.

Miller, Huebner & Miller, of Des Moines, for appellants.

Herrick & Langdon, of Des Moines, for appellees.

GARFIELD, J.—Defendants contend that at the time of his fatal injury Brewer was not a "workman" or "employee" within the meaning of section 85.61, paragraph 2, Code, 1946, because it appears without conflict. he was (1) "A person holding an official position, or standing in a representative capacity of the employer," as provided by paragraph 3d (paragraph 3c, Code, 1950, I. C. A.) of said section and (2) a joint or coadventurer with defendant Central Construction Company in doing paving

and surfacing. The deputy industrial commissioner as sole arbitrator, the commissioner upon review and the district court upon appeal held against defendants upon both propositions.

I. If there is sufficient competent evidence—or, as we have frequently said, substantial evidence—to support the commissioner's finding that Brewer was an employee within the purview of section 85.61, then such finding is conclusive. Unless it appears without conflict, as defendants contend, that decedent held an official position or stood in a representative capacity or was a joint or coadventurer, the award must be affirmed. See Code section 86.29; Taylor v. Horning, 240 Iowa 888, 889 to 891, 38 N.W.2d 105, 106, 107, and citations; Alm v. Morris Barick Cattle Co., 240 Iowa 1174, 1175, 1176, 38 N.W.2d 161, 162; Gardner v. Trustees of M. E. Church, 217 Iowa 1390, 1401, 250 N.W. 740.

In passing on the sufficiency of the evidence to support the award we must consider it in the light most favorable to claimants. Pohler v. T. W. Snow Constr. Co., 239 Iowa 1018, 1021, 33 N.W.2d 416, 418, and citations; Alm v. Morris Barick Cattle Co., supra. When so considered, there is substantial evidence in support of the award.

II. Defendant Central Construction Company is a partnership composed of four individuals. Its principal place of business is Indianola. It was engaged in highway grading and a small amount of ditching and paving. Decedent was an engineer formerly with the Iowa State Highway Commission and then with a cement company. He was killed September 5, 1948. He went to work for defendant company on March 1, 1948, under a written agreement which is important in determining his status.

The agreement recites that the company "desires help and assistance in the management of the Concrete Division" to do paving and surfacing for one year; "first party [company] will retain the services of second party [Brewer] to manage or supervise the construction of all paving * * * projects which are contracted for * * * by first party"; if more than one project is under construction at the same time the company will employ such foremen or superintendents as may be needed to work under Brewer's direction; Brewer agrees to serve the company

to the best of his ability on any other types of work not under his supervision when it is to the best interests of the company; Brewer is to receive twenty per cent of the net profits from all projects managed or supervised by him during the year or $5200, whichever is greater.

Paragraph 6 of the agreement provides, "Final decisions as to all policy matters, determination of which jobs will be contracted for, purchase of major equipment and * * * subcontracts will be made by first party [company]."

Under this agreement Brewer supervised four paving jobs including one at Osceola in progress when he was killed. The total contract price of the four jobs was about $325,000, of which the Osceola job represented slightly more than half. It does not appear what part of that job was completed when Brewer was killed.

Brewer worked only in the paving and surfacing branch of the company's business. He used for transportation a pickup truck which belonged to the company with its name painted on the side. Burkey, a partner in defendant company, testified the company approved Brewer's use of the truck and about everything he did. Brewer selected and the company paid for equipment costing about $75,000 for use in paving. Brewer prepared bids on paving jobs and submitted them to a partner for approval. Burkey, who signed all company checks, would write the checks to accompany the bids and take them to the state highway commission which awarded the contracts. Brewer signed no contracts with the highway commission and was never authorized to write checks.

Brewer selected the foremen and other employees on paving jobs, fixed their wages, promoted and discharged help. He ordered cement and other materials. At times he rented some additional equipment. Brewer made some arrangements with subcontractors without first procuring the partners' approval. Burkey testified, "He might tell us about it afterwards or I might have drawn up an agreement afterwards." An employee who had been working at paving by the hour said Brewer asked him why he did not work for the company by the week and he (Brewer) said "I will go into the office and see what

I can do for you." After Brewer returned from the office it was agreed the employee would work by the week.

Timecards were kept by the employees, approved by foremen, then by Brewer, who turned them in to the company office at Indianola where all records were kept and checks issued. On the night of Brewer's fatal injury in a collision between the company's pickup and another truck, Brewer had worked until about ten on timecards after working until about eight finishing with a trowel a driveway in Osceola.

It is not shown that the written agreement (Exhibit A) was abrogated or rescinded prior to Brewer's death. There is some evidence of some deviations from it. Burkey testified, "We deviated from paragraph 6 [quoted above] of Exhibit A to some extent, I would think."

III. It certainly does not appear without conflict that Brewer held an official position with defendant company. Nor does it so appear that he stood "in a representative capacity of the employer." In a sense, all agents are representatives of their employer. Standing "in a representative capacity" as used in section 85.61, 3d (3c, Code, 1950, I. C. A.) must mean something more than acting as the ordinary agent of an employer. Obviously this statute was not designed to exclude all representatives of an employer from the benefits of the compensation act but only those entrusted with such broad executive powers as to represent or stand in the place of the employer. See Dewey v. National Tank Maintenance Corp., 233 Iowa 58, 63, 8 N.W.2d 593, 596; Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 327, 5 N.W.2d 619, 624.

While Brewer was vested with considerable discretion in the particular field of his employment there is evidence of definite limitations, both under the terms of the agreement and in practice, upon his right to represent defendant company. As stated, the agreement reserves to the company the right to make final decisions as to all policy matters, determination of what jobs to contract for, purchase of major equipment, and subcontracts. That there may have been occasional deviations "to some extent" from the terms of the agreement is insufficient to show without conflict that Brewer stood in a representative capacity within the meaning of section 85.61(3d).

We have referred to evidence that on one occasion decedent apparently procured express authority from the company before changing the terms of employment of a workman and that Brewer's use of the company's pickup truck and other acts were approved by it. Brewer had no authority to disburse the company's funds, and never did so. In fact he had no authority to represent the company in any respect except in accordance with the terms of the agreement.

That the partner Mr. Burkey, as a witness for claimants, expressed the opinion there were no limitations upon Brewer does not entitle defendants to a reversal in view of the terms of the agreement and evidence that in practice Brewer exercised only limited authority. See Burch Mfg. Co. v. McKee, 231 Iowa 730, 733, 2 N.W.2d 98, 100; Hatheway v. Hanson, 230 Iowa 386, 396, 297 N.W. 824, 828; Brunskill v. Wallace, 224 Iowa 629, 631, 276 N.W. 598; Johnson v. Warrington, 213 Iowa 1216, 1218, 240 N.W. 668.

In support of their contention that decedent stood in a representative capacity defendants rely upon Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N.W. 613; Hamilton v. Farmer Canning Co., 220 Iowa 25, 261 N.W. 506; Pattee v. Fullerton Lbr. Co., 220 Iowa 1181, 263 N.W. 839. They are not controlling. These three decisions are explained in Danico v. Davenport Chamber of Commerce, supra, 232 Iowa 318, 5 N.W.2d 619. The Kutil and Hamilton cases are discussed in Dewey v. National Tank Maintenance Corp., supra, 233 Iowa 58, 8 N.W.2d 593. See also Whitney v. Rural Independent Sch. Dist., 232 Iowa 61, 72, 4 N.W.2d 394, 399, 140 A. L. R. 1376, 1382.

The Kutil case, supra, involved fatal injury to the president, who was also an organizer and board member, of defendant corporation. The commissioner found he was "a person holding an official position" within section 85.61(3d). In all three of these decisions, relied upon by defendants, compensation was denied by the deputy commissioner, the commissioner and the district court, and it was necessary for us to decide only whether there was sufficient competent evidence to warrant the decision. In the Hamilton case, supra, which seems to be defendants' chief reliance, we said (page 27 of 220 Iowa, page 508 of 261 N.W.):

"We have here a record which amply supports the claim that Hamilton * * * stood in a representative capacity to his employer."

What we said in Pohler v. T. W. Snow Constr. Co., supra, 239 Iowa 1018, 1025, 33 N.W.2d 416, 420, is applicable here: "* * * in the five compensation cases cited * * * the industrial commission had denied an award. Obviously such cases present a different question than one like this in which an award was made."

In none of the above cases cited by defendants was it necessary to decide whether there was substantial evidence to support an award if one had been made, just as it is unnecessary here to decide whether there is substantial evidence to support the defense that Brewer stood in a representative capacity if the commissioner had upheld such defense.

■ Defendants argue that the word "representative" in section 85.61(3d) has the same meaning as it has in section 85.23, which deals with knowledge and notice of injury. It is said Brewer's knowledge of injury to another employee of defendant company would be knowledge of the company's "representative" within 85.23, and therefore Brewer must be held to have stood "in a representative capacity" under 85.61(3d). It is sufficient answer that our decisions heretofore cited have not accorded such a broad meaning to the term used in 85.61(3d). This same contention was urged and the same authorities were cited by the same counsel in support thereof, but we did not accept it, in Criger v. Mustaba Inv. Co., 224 Iowa 1111, 1116, 276 N.W. 788.

It would not be giving the compensation act the liberal construction it is entitled to receive to construe the exclusion in 85.61(3d) so broadly as defendants argue. That the act should be liberally construed, see Code section 4.2; Yates v. Humphrey, 218 Iowa 792, 799, 800, 255 N.W. 639, 642, and citations; Garrison v. Gortler, 234 Iowa 541, 548, 13 N.W.2d 358, 361, and citations; Heiliger v. City of Sheldon, 236 Iowa 146, 152, 18 N.W.2d 182, 186; 58 Am. Jur., Workmen's Compensation, section 27; 71 C. J., Workmen's Compensation Acts, section 65, page 345; id., section 160.

■ IV. Our compensation act does not in terms exclude

from those entitled to its protection one who is a joint adventurer with his claimed employer. We have held an employer or employee is ordinarily within the act unless it expressly excludes him. Heiliger v. City of Sheldon, supra, 236 Iowa 146, 152, 153, 18 N.W.2d 182, 186, and citations.

While there are decisions to the contrary it is sometimes held a partner cannot be an employee of the partnership within the meaning of a compensation statute. This is on the theory one cannot be at the same time both employer and employee. See 58 Am. Jur., Workmen's Compensation, section 146; 71 C. J., Workmen's Compensation Acts, section 234; Horovitz on Workmen's Compensation (1944), pages 198, 199.

█ It has also been said that one who is a joint adventurer is not entitled to compensation. 71 C. J., Workmen's Compensation Acts, section 236. We may assume this is true without so deciding. However, we are clear it is not shown without conflict that Brewer was a joint adventurer.

█ █ A joint adventure is defined as an association of two or more persons to carry out a single business enterprise for profit; also as a common undertaking in which two or more combine their property, money, efforts, skill or knowledge. The outstanding difference between a joint adventure and a partnership is that the former usually relates to a single transaction while the latter usually relates to a continuing business. Johanik v. Des Moines Drug Co., 235 Iowa 679, 685, 17 N.W.2d 385, 389, and citations; 48 C. J. S., Joint Adventures, section 1b(6), pages 806 to 809.

As a rule, a joint adventure is characterized by a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits and a duty to share the losses. 48 C. J. S., Joint Adventures, section 2a; 30 Am. Jur., Joint Adventures, sections 11, 12.

It is not claimed Brewer was a partner in the company. It definitely appears he was not. He owned no interest in the business. The right of control was vested in the company and Brewer had only such authority as was delegated to him. There is no evidence of any express or implied agreement for sharing any losses. Indeed Brewer was assured compensation of $5200 for the first year which negatives the idea he would share any

losses. The agreement he should receive a share of the profits would not benefit him unless the share exceeded- $5200. Participation in profits does not establish the existence of a joint adventure. See authorities last above. It is not unusual for employees to receive a share of profits as compensation.

The commissioner's decision states in effect that a duty to share losses is essential to a joint adventure. Defendants assert this is an incorrect rule of law. While there is some outside authority to support defendants' contention, it is usually held, as above indicated, that an agreement, express or implied, to share losses is essential to a joint adventure. 48 C. J. S., Joint Adventures, section 2a, page 811, section 11a, page 839; 30 Am. Jur., Joint Adventures, sections 12, 33. See also Bond v. O'Donnell, 205 Iowa 902, 909 to 913, 218 N.W. 898, 63 A. L. R. 901; annotations 48 A. L. R. 1055, 63 A. L. R. 909, 138 A. L. R. 968. It is generally held that joint adventurers, as between themselves, are governed by the same rules, at least of substantive law, that govern partners. Johanik v. Des Moines Drug Co., 235 Iowa 679, 685, 686, 17 N.W.2d 385, 389, and citations; 48 C. J. S., Joint Adventures, section 1b(6), pages 806 to 808.

After due consideration of all contentions advanced by defendants, this cause is—Affirmed.

All JUSTICES concur.