Gail James LOVEWELL, Claimant-
Appellee,

v.

Nelda Ann Elizabeth LOVEWELL, d/b/a
Jim's 67 Filling Station, Employer, and
United States Fidelity and Guaranty Co.
of Baltimore, Maryland, Insurance Car-
rier-Appellant.

No. 53160.

Supreme Court of Iowa.

Jan. 14, 1969.

Rehearing Denied March 10, 1969.

Lumbach, Christiansen, Stevenson & Goebel, Davenport, for insurance carrier-appellant.

A. Fred Berger, Davenport, for claimant-appellee.

STUART, Justice.

The husband filed a claim for workmen's compensation against his wife and her insurance carrier. The deputy industrial commissioner as sole arbitrator, the commissioner upon review and the district court upon appeal held for claimant. We reverse.

The only issue necessary to our decision is whether, assuming claimant was an employee of his wife, he was excluded from workmen's compensation coverage under that portion of section 85.61(3) Code of Iowa, which provides:

"The following persons shall not be deemed 'workmen' or 'employees' * * *

"c. A person * * * standing in a representative capacity of the employer, * * *."

This exclusion was unique to the Iowa Workmen's Compensation Law. Hamilton v. J. Le Roy Farmer Canning Co., 220 Iowa 25, 261 N.W. 506, 508; Davis, Workmen's Compensation—Excluded Employment, 16 Drake L.Review 68, 82. It was repealed by chapter 115, Laws of the 62 General Assembly. Unfortunately the injury in question here occurred in 1965 prior to the effective date of the act. (July 1, 1967)

■ We have considered this particular exclusion several times. Brewer v. Central Construction Co., 241 Iowa 799, 43 N.W.2d 131; Dewey v. National Tank Maintenance Corporation, 233 Iowa 58, 8 N.W.2d 593; Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 5 N.W.2d 619; Schroyer v. Jasper County, 224 Iowa 1391, 279 N.W. 118; Pattee v. Fullerton Lumber Co., 220 Iowa 1181, 263 N.W. 839; Hamilton v. J. Le Roy Farmer Canning Co., 220 Iowa 25, 261 N.W. 506; Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N.W. 613. An employee in a representative capacity has been defined as one "entrusted with such broad executive powers as to represent or stand in the place of the employer". Brewer v. Central Construction Co., 241 Iowa at 803, 43 N.W.2d at 134. The "employer's alter ego". Dewey v. National Tank Maintenance Corporation, 233 Iowa at 63, 8 N.W.2d at 596.

■ In passing on the sufficiency of the evidence to support the award we must consider it in the light most favorable to claimant. Brewer v. Central Construction Co., 241 Iowa 799, 801, 43 N.W.2d 131, 133. Our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make but whether the decision he did make is warranted by the record. Wagner v. Otis Radio and Electric Co., 254 Iowa 990, 994, 119 N.W. 2d 751, 753. The burden is on defendant to prove claimant is excluded from coverage under the provisions of section 85.-61(3). Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 344, 107 N.W.2d 102, 104–105; Dewey v. National Tank Maintenance Corporation, 233 Iowa 58, 63, 8 N.W.2d 593, 596. Even so, we are compelled under this record to hold claimant stood in his wife's place and represented her in such a manner as to be excluded from coverage under the statute.

There is no conflict in the evidence of the business relationship between the claimant and his wife.

In December 1954 claimant invested $2500 he and his wife had saved from their

earnings in a gasoline service station. From that time until June 1960 he operated under the trade name of Jim's 66 Service and had title to the vehicles used in connection with the station.

In June 1960 his driver's license was suspended and he was ordered to surrender the license plates on all vehicles he owned. As this would put him out of business, he transferred title to the vehicles to his wife. At this time she acquired a sales tax permit, a cigarette permit and a withholding and social security number in her own name. The station continued to operate as Jim's 66 Service until location and brand of gas were changed. It was then renamed Jim's 67 Service. Title to the vehicles remained in Mrs. Lovewell's name. All insurance, including workmen's compensation, and merchandise were purchased in her name and she was responsible for payment.

There was no change in the method of operating the service station when title was transferred or when the station was moved. Claimant managed the station. He did the mechanical and repair work and kept the books. He prepared the necessary social security and withholding returns for his wife's signature.

Mrs. Lovewell performed the same duties after she was owner of the business that she performed before. She kept house for claimant, ran after parts for him and when he was very busy, helped wash cars and pump gas.

Mr. and Mrs. Lovewell had only one checking account carried under the station's trade name upon which either could write checks. Claimant testified "as manager of the station I received a salary of $65 a week. I set the amount at $65." He never discussed wages with his wife. None were reported for him on social security or withholding tax reports. Claimant "showed as net earnings from self-employment the net profits made on the business known as Jim's 67 Service".

Mrs. Lovewell testified:

"Whether I exercise the right or not. I have the right to select the manager of this particular filling station. I have the responsibility for the payment of wages to all the employees of this particular filling station. I have the right to discharge or terminate the relationship of any of these employees. I have a right to control their work. The station is being operated for my benefit and the rest of the family. All of the licenses are in my name. All of the property is in my name. I sign all the necessary forms and returns with all of the Governmental agencies. These are all in my name."

"I first felt that I had the right to fire my husband in the job that he holds—well, actually is signed over to you and it is your responsibility, you would right then and there know that you had this power, although it being your husband you would probably know it would never come to pass. It's a standing joke that we talk about."

"We always worked as a team. In the operation of the station, regardless of how much physical time I may have spent in it prior to the time of transfer to my name, if he needed help I was always there and always available. I would help wash cars and that type of thing before this came in my name also, different areas wherever he needed me. As a family unit, after the children began coming, I contributed by my services as a wife and mother. He contributed in his services in the business. It was always more or less regarded as a family business. It is still more or less regarded in the same way."

The cases cited above are not factually similar and are helpful only in so far as they defined "representative capacity". We are unable to escape the conclusion the claimant was standing in the place of his wife and was representing her in the management of the business conducted in her name.

The business was transferred to her to keep it in operation. It was left in her name because claimant "just never saw any reason to transfer the business back to my name". Mrs. Lovewell's testimony she signed the tax returns and had the right to fire her husband and other employees is evidence of ownership but does not limit the broad executive powers of the claimant to operate the station. Her ultimate responsibility for the payment of the business debts is not inconsistent with the authority to manage the business vested in her husband. We have searched in vain for evidence of some limitation on his management authority and have found none. The work she did at the station on occasions was that of an employee rather than a manager.

It is clear both claimant and his wife consider the responsibility for the management of the station to be his. Her responsibility is the home. The business is operated for the benefit of the family. In addition to the foregoing evidence this conclusion is supported by many of claimant's answers.

"The business (not my wife) pays me $65 a week."

"I changed the name of *my* business to Jim's 67 Service when the business changed from a Phillips station to a Skelly station in 1961."

"*I* am at present trying to hire a full-time man."

"*My* help's pay was used as a basis of compensation for the workmen's compensation premium."

"With the exception of P–H Oil Company I believe that the people with whom *I* do business believe this to be my business."

"Due to the frequency of break-ins of *my* station *my* burglary insurance was cancelled out, and *I* went to contact Mr. Chalup to see if he was interested in writing *my* insurance, and I would give him all *my* insurance business if he could get *me* burglary insurance." (Emphasis supplied)

We can conceive of no situation in which a person could retain any incidents of ownership and more completely turn the management of her property over to some one else. We could not affirm this case without reading this exclusion out of the code.

II. Claimant cites cases from Louisiana and Mississippi for the proposition that the acceptance of a premium for a husband of the employer on a workmen's compensation insurance policy estops insurer from claiming the husband is excluded from coverage. This is not the law of Iowa.

"We have held his rights cannot be enlarged by the terms of the policy. Maryland Casualty Co. v. Dutch Mill Service Co., 220 Iowa 646, 262 N.W. 776. Or created thereby when they did not otherwise exist. Stiles v. Des Moines Council Boy Scouts of America, 209 Iowa 1235, 229 N.W. 841." Bates v. Nelson, 240 Iowa 926, 932, 38 N.W.2d 631, 634.

"* * * under our statutes the liability of the insurance carrier to the injured employee depends only upon the liability of the employer to the employee, regardless of any question that may arise between the employer and such insurer." Bates v. Nelson, 240 Iowa at 933, 38 N.W.2d at 635.

In any event his claim that an additional minimum premium was charged for him as manager is not supported by the policy. The commissioner found he "did not list himself as an employee on the payroll records, which were the basis of the workmen's compensation insurance premiums". His proposition finds no factual support in the record.

III. It is well the legislature has seen fit to eliminate this anomaly from the Iowa Workmen's Compensation Law. It is

unfortunate that its action in 1967 is of no benefit to this claimant. We find no indication that the repeal of the exclusion was intended to be retro-active.

For the reasons stated we must reverse the decision of the trial court.

Reversed.

All Justices concur.