# IN THE SUPREME COURT OF IOWA

No. 17–1169

Filed April 12, 2019

**WINGER CONTRACTING COMPANY,**

Appellant,

vs.

**CARGILL, INCORPORATED,**

Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRACER CONSTRUCTION, LLC,

Plaintiff,

vs.

**CARGILL, INCORPORATED,**

Appellee,

and

**WINGER CONTRACTING COMPANY, PETERSON CONTRACTORS, INC., AMERICAN PIPING GROUP, INC., TRI-CITY ELECTRIC COMPANY OF IOWA,** and **TAI SPECIALTY CONSTRUCTION, INC.,**

Appellants.

---

Appeal from the Iowa District Court for Monroe County, John D. Telleen, Business Specialty Court Judge.

Interlocutory appeal from a grant of partial summary judgment. **AFFIRMED.**

Nick Critelli and Lylea D. Critelli of CritelliLaw, P.C., Des Moines, and Patrick Curran of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellant Winger Contracting Company.

Abby S. Wessel of Rickert & Wessel Law Office, P.C., Reinbeck, for appellant Peterson Contractors, Inc.

Benjamin J. Patterson and Timothy B. Gulbranson of Lane & Waterman LLP, Davenport, for appellants American Piping Group, Inc.; Tri-City Electric Company of Iowa; and TAI Specialty Construction, Inc.

John F. Fatino and Erik S. Fisk of Whitfield & Eddy, P.L.C., Des Moines, for appellant Tracer Construction, LLC (until withdrawal).

Dana L. Oxley, Samuel E. Jones, and Jared S. Adam of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellee.

**APPEL, Justice.**

In this case, we are called upon to decide whether mechanic's liens arising from the provision of materials and labor to a lessee attach to the property of the lessor under the facts and circumstances of this case. The case also presents the question of whether a construction mortgage lien ultimately obtained by the owner of the land on the leasehold and property of the lessee has priority over later-filed mechanic's liens.

The proceedings below were heard in the Iowa Business Specialty Court, a district court. A number of businesses sought to foreclose mechanic's liens against the property of a lessor for work authorized by a lessee. They also asked the court to declare their liens superior to the construction mortgage lien held by the property owner. Pursuant to a case management order, the parties filed competing motions for partial summary judgment to resolve the key underlying issues related to priority of the liens.

The district court ruled that the mechanic's liens did not attach to the property of the lessor and that the construction mortgage lien on the lessee's property had priority over the mechanic's liens. As a result, the district court denied the mechanic's lien claimants' motions for summary judgment and granted the lessor's motion for summary judgment. The mechanic's lien claimants filed a motion for expanded findings and conclusions under Iowa Rule of Civil Procedure 1.904(2). Except for refining the question of the scope of the land subject to the court's ruling, the district court denied the motion.

The mechanic's lien claimants appealed. We granted interlocutory review. For the reasons expressed below, we affirm the ruling of the district court.

**I. Factual and Procedural Background.**

**A. The Lease Between Cargill and HFCA for Construction of Chlor-Alkali Facility.**

1. *General overview.* Cargill, Incorporated entered into a fifty-year lease with HF Chlor-Alkali, LLC (HFCA) to allow HFCA to construct a chlor-alkali manufacturing facility and other improvements on land owned by Cargill in Eddyville, Iowa. The lease required HFCA to pay $12,000 annual rent along with other consideration, including payment of property taxes, reimbursement for security services, and under some circumstances, insurance. In the lease, HFCA covenanted to Cargill that it would not use the land for anything other than a chlor-alkali facility without Cargill's approval.

The lease provided that Cargill would continue to own the land, while HFCA would own the chlor-alkali facility. The lease stated,

> All additions, alterations and improvements to the Land made from time to time over the Term, including, without limitation, the Facility, the Improvements and all of Lessee's Property located therein, shall be the property of Lessee and Lessee shall have title to all such additions, alterations and improvements, subject to the provisions of Article XIX herein.

Article XIX, in turn, required HFCA to remove the facility from the land after the lease ends unless different arrangements are made between the parties. Specifically, Article XIX stated, in part,

> Unless otherwise approved by Cargill in writing, Lessee shall have the obligation, as soon as commercially practicable after the expiration or earlier termination of this Lease, to remove any and all Improvements and Lessee's Property or other improvements of any nature and kind from the Land, and provided that the portion of the Land to which such items may have been affixed shall be restored by Lessee to substantially the condition existing on the Effective Date.

2. *Powers and limitations on HFCA.* The lease allowed HFCA to encumber, assign, or mortgage to a secured creditor either its leasehold

estate in the land or its fee estate in the facility. Notably, however, the lease contained a provision limiting the nature of the Cargill–HFCA relationship. Specifically, section 22.14 of the lease provided that nothing in the lease should be construed "as creating a partnership, joint venture, or association" between Cargill and HFCA or "cause either party to be responsible in any way for the debts or obligations of the other party." Further, section 22.14 provided that neither the method of computing rent, nor any provision of the lease, nor any acts of the parties "shall be deemed to create any relationship" between Cargill and HFCA "other than the relationship of landlord and tenant."

Section 23.05 of the lease related to liens. This provision stated that "Lessee shall keep the Premises free from any and all liens arising out of any work performed, materials furnished or obligations incurred due to Lessee or its Affiliates."

3. *Conditions precedent.* The lease contained a number of conditions precedent. The lease declared that as a condition precedent, HFCA "will receive Cargill's approval of the plans and specifications for the Improvements . . . which approval Cargill shall not unreasonably withhold." Under the lease, the term "Improvements" meant "all buildings, fixtures, structures and other improvements built by Lessee on the Land."

Another condition precedent to the lease provided that the parties would enter into six "ancillary agreements." In the first ancillary agreement, Cargill agreed to purchase and HFCA agreed to supply a "long-term stable supply of [chemicals] for use at [Cargill's] processing facilities." The second ancillary agreement provided that HFCA's affiliate would purchase from Cargill the chemicals produced by HFCA that exceeded Cargill's requirements. Like the first ancillary agreement, the second ancillary agreement included a price and an initial term of ten years. In

the third and fourth ancillary agreements, Cargill agreed to process, treat, and sell water to HFCA, an essential input to HFCA's production of chlor-alkali. The fifth ancillary agreement related to security services, and the sixth ancillary agreement allowed HFCA additional access to Cargill's property. The lease agreement between Cargill and HFCA provided for termination in the event of a breach of any obligation under the ancillary agreements.

4. *Recording of memorandum of lease with county recorder.* A memorandum of lease was filed with the Monroe County recorder. The memorandum of lease identified the lease agreement as related to the Cargill property by legal description, identified the parties, stated that the lease was for a term of fifty years, and declared that it incorporated by reference all the terms and conditions of the lease. While the public record revealed the description of the land and the incorporation of the lease by reference, the specific terms of the lease were not recorded.

**B. Financing the Construction of the Chlor-Alkali Facility.** In order to finance construction of the chlor-alkali facility, Cargill assisted HFCA in obtaining $80 million in bond financing through the Iowa Finance Authority. As part of the financing arrangements, U.S. Bank issued a letter of credit guaranteeing payment to the bond trustee and HFCA agreed to reimburse U.S. Bank for payments made under the letter of credit. Under the agreement, HFCA covenanted to U.S. Bank that it would execute and deliver a leasehold mortgage and assignment of rents and leases. Pursuant to the leasehold mortgage, HFCA granted a first priority leasehold mortgage lien and security interest to U.S. Bank that encumbered all of HFCA's rights in the leasehold estate and the chlor-alkali facility. As a condition precedent to U.S. Bank's issuing the letter of credit guaranteeing payment to the bond trustee, Cargill agreed to

purchase the rights and obligations of U.S. Bank in the event HFCA defaulted. The parties refer to this condition precedent as a "put agreement." HFCA also obtained at least $40 million in financing from a Cargill subsidiary. U.S. Bank recorded the mortgage on August 29, 2013.

**C. Mechanic's Liens, Enforcement Action, Loan Default, and Exercise of the Put.** HFCA entered into contracts with two general contractors to construct the facilities. Either HFCA or the general contractors entered into contracts with a number of subcontractors, including Winger Contracting Company, Peterson Contractors, Inc., Tri-City Electric Company of Iowa, TAI Specialty Construction, Inc., and American Piping Group, Inc. Neither Winger nor any of the general contractors or other subcontractors entered into any contracts with Cargill regarding the construction of the facility or any improvements to Cargill's land. Unfortunately, the project fell apart, and the contractors were not paid in full for their work on the project.

The contractors filed mechanic's liens based upon their work on the facility in 2015 and early 2016. They sought to foreclose their mechanic's liens against Cargill's fee interest in the real property on which the facility is located. Two foreclosure actions were filed in district court, one in September 2015 and another in May 2016.

In July 2016, U.S. Bank declared a default after HFCA failed to reimburse U.S. Bank for a bond interest payment and failed to pay quarterly fees to U.S. Bank. The default caused the bond trustee to declare the total amount of about $80 million under the bond financing due immediately. U.S. Bank paid off the bond pursuant to the letter of credit. U.S. Bank then exercised its put, leading Cargill to pay U.S. Bank approximately $80 million. Pursuant to the put, U.S. Bank assigned and

transferred to Cargill all of its right, title, and interest in and to, among other things, its construction mortgage related to HFCA's property.

**D. Proceedings in District Court.** After the mechanic's lien claimants filed actions to foreclose mechanic's liens against Cargill, the district court entered a case management order. The district court recognized that the mechanic's lienholders' priority in relation to any claimed mortgage or security interest held by Cargill was a core issue in the litigation. As a result, the district court directed Winger and another contractor to move for partial summary judgment on the question of priority of the mechanic's liens in relation to the collateral held by Cargill.

Winger filed a motion for partial summary judgment.[1] Winger advanced what amounted to a joint venture theory. Winger claimed that Cargill and HFCA did not have a simple lessor–lessee relationship but were engaged in an ongoing and continuing business relationship combining their property, effort, money, skill, and knowledge for their mutual benefit. This relationship, according to Winger, resulted in a business enterprise, joint venture, and/or a joint adventure under *Brewer v. Central Construction Co.*, 241 Iowa 799, 806, 43 N.W.2d 131, 136 (1950), and *Denniston & Partridge Co. v. Romp,* 244 Iowa 204, 208–09, 56 N.W.2d 601, 604 (1953).

Winger also advanced an agency theory. Winger claimed that the Cargill–HFCA lease conferred benefits on Cargill that could only arise from constructing the facility. Winger noted that the parties recognized that a substantial amount of the money guaranteed by Cargill would be used to construct the facility. As a result, Winger claimed that HFCA was Cargill's agent when contracting for the services of the contractors, subjecting

---

[1]Winger's motion was joined by Peterson, Tri-City, TAI, American Piping, and other parties to the litigation.

Cargill's property to the asserted mechanic's liens. In support of its agency theory, Winger cited *Stroh Corp. v. K & S Development Corp.*, 247 N.W.2d 750, 752 (Iowa 1976).

Additionally, Winger asserted that finding that Cargill could avoid liability on the mechanic's liens would result in "the ultimate in unjust enrichment." According to Winger, allowing Cargill to purchase the lease mortgage on its own property ten months after the filing of mechanic's liens and claim that its newly acquired rights in the property are superior to the mechanic's liens would be "the ultimate in absurdity and artifice for fraud." Winger argued that equity requires substance and intent, rather than form, should govern to prevent injustice. *See Veale Lumber Co. v. Brown*, 197 Iowa 240, 244, 195 N.W. 248, 250 (1923).

Winger also asserted the mechanic's liens that unquestionably did attach to the property of HFCA were superior to the construction mortgage lien asserted by Cargill. Winger contended the mortgage in this case amounted to an artifice to deprive the mechanic's lienholders of their just compensation. In support of its argument, Winger cited *Veale*, 197 Iowa at 244, 195 N.W. at 250.

Cargill resisted and filed a cross-motion for partial summary judgment. Cargill asserted that amendments to the mechanic's lien statute enacted in 2007 make it clear that a mechanic's lien arises only out of a contract with the owner and not a contract with the owner's agent. 2007 Iowa Acts ch. 83, § 3 (codified at Iowa Code § 572.2 (Supp. 2007)). Thus, according to Cargill, the mechanic's liens in this case attached only to a building, improvement, or land belonging to HFCA, the owner with whom the mechanic's lien claimants entered into contract. Further, Cargill argued that in 2012, the legislature narrowed the definition of owner in the mechanic's lien statute by eliminating from the definition

"every person for whose use or benefit any building, erection, or other improvement is made." 2012 Iowa Acts ch. 1105, § 2 (codified at Iowa Code § 572.1(8) (2013)). As a result of the 2012 deletion, Cargill noted, the term "owner" is now limited to "the legal or equitable titleholder of record." Iowa Code § 572.1(8) (2015).[2] Cargill argued that it was not the legal or equitable titleholder of the improvements. According to Cargill, HFCA owned the property.

Aside from its statutory argument, Cargill argued that the undisputed facts did not provide a basis for attachment of mechanic's liens to Cargill's land. According to Cargill, the relationship with Cargill and HFCA did not establish an agency. Cargill argued applicable caselaw holds that whether a lessee became an agent of the lessor depended upon three factors: (1) whether the buildings or improvements become property of the lessor within a comparatively short period of time, (2) whether the additions were permanent and beneficial to the real property and so contemplated by the parties at the time of the lease, and (3) whether the lease payments reflected the additional value created by the improvements. *See Ringland-Johnson-Crowley Co. v. First Cent. Serv. Corp.*, 255 N.W.2d 149, 151 (Iowa 1977). According to Cargill, these criteria for an implied agency were not met here because the lease term was for fifty years, the facility and improvements remained the property of HFCA during that term and afterwards, HFCA had the obligation to maintain the premises excepted for ordinary wear and tear, HFCA had the obligation at the end of the term to remove the facility, and the fixed fifty-year annual rent for the leasehold interest was $12,000. Further, the lease

---

[2]All statutory references herein are to the 2015 version of the Iowa Code unless otherwise stated.

agreement itself, Cargill noted, expressly stated that the relationship between Cargill and HFCA was limited to a landlord–tenant relationship.

Cargill also resisted the claim that it was a joint venturer with HFCA. Cargill emphasized that under the lease, there was no "right to share in the profits" or "duty to share the losses." *Brewer*, 241 Iowa at 806, 43 N.W.2d at 136. Further, under the lease agreement, HFCA owned the facility, and as a result, there was no "joint proprietary interest."

On the issue of lien superiority, Cargill argued that it was the assignee of a construction mortgage lien originally filed by U.S. Bank on August 29, 2013. Cargill asserted that a construction mortgage lien takes priority over "all mechanics' liens of claimants who commenced their particular work or improvement subsequent to the date of the recording of the construction mortgage lien." Iowa Code § 572.18(2).

The district court denied Winger's motion for partial summary judgment and granted Cargill's cross-motion for partial summary judgment. The district court observed that, ordinarily, lienholders contracting with lessees cannot acquire greater interest in real estate than the interests owned by the lessees. *See Queal Lumber Co. v. Lipman*, 200 Iowa 1376, 1378, 206 N.W. 627, 628 (1925). The district court then determined that, in light of the recent legislative changes to Iowa Code chapter 572, a mechanic's lienholder could no longer reach the property of a lessor by claiming a contract with a lessee as agent of the owner. *See* 2012 Iowa Acts ch. 1105, § 2 (codified at Iowa Code § 572.1(8) (2013)); 2007 Iowa Acts ch. 83, § 3 (codified at Iowa Code § 572.2 (Supp. 2007)). As a result, the district court concluded that *Romp*, 244 Iowa at 208–09, 56 N.W.2d at 604, and *Stroh*, 247 N.W.2d at 752, were no longer good law.

In the alternative, the district court held that *Romp* and *Stroh* were distinguishable from the present case. The district court stated that this

case is unlike *Stroh* because the lease agreement here, which expressly disavowed partnership or joint venture and disavowed HFCA authority to permit mechanic's liens, was recorded.[3] Further, the district court noted that the improvements on the land became property of the landlord at the end of the lease term in both *Romp* and *Stroh*.

Finally, the district court also held that while Winger could place a mechanic's lien on HFCA's property (the facility and its leasehold interest), Cargill's mortgage lien had priority because U.S. Bank recorded its mortgage before the mechanic's liens were filed. The district court found that on this issue, the provisions of Iowa Code section 572.18(2) were controlling.

Winger filed a motion to reconsider under Iowa Rule of Civil Procedure 1.904(2). In the motion, Winger rehashed issues already presented to the district court. Winger also, however, pointed to language in Iowa Code section 572.2(1) which provides that

> those engaged in grading, sodding, installing nursery stock, landscaping, sidewalk building, fencing on any land or lot, by virtue of any contract with the owner, owner-builder, general contractor, or subcontractor shall have a lien upon such building or improvement, and land *belonging to the owner on which the same is situated* or upon the land or lot so graded, landscaped, fenced, *or otherwise improved, altered, or repaired*, to secure payment for the material or labor furnished or labor performed.

Iowa Code § 572.2(1) (emphasis added). Pursuant to that emphasized language, according to Winger, its lien attached not simply to land "belonging to the owner," but also to land upon which the improvements were made.

---

[3]The entire lease agreement between HFCA and Cargill was not recorded. What was recorded was a memorandum of lease that identified the property and the fact that a lease existed between the parties. The memorandum of lease incorporated the terms of the lease by reference but did not disclose the actual terms of the lease.

Peterson joined Winger's motion to reconsider but also filed a separate 1.904(2) motion. Peterson argued that it had performed work "directly to the land" which entitled it to a lien on Cargill's fee interest. Peterson claimed that it "was hired, among other things, to move dirt, provide concrete paving and erosion control, strip, salvage and spread topsoil, clear and grub the land, and install storm sewers and fencing." Accordingly, Peterson asserted it was separately entitled to a lien "upon the land or lot so graded, landscaped, fenced, or otherwise improved, altered, or repaired." *Id.*

In addition, Peterson challenged the district court's ruling as overbroad. Specifically, Peterson claimed the district court judgment extended to Cargill property outside the scope of the property interests involved in the lease transaction and thus should not have been affected by the motions for summary judgment.

Other mechanic's lien claimants also joined Winger's motion to reconsider. In their joinders, Tri-City, TAI, and American Piping each asserted that they "provided labor and materials that improved the land," and "[f]or the same reasons set forth in . . . Winger's Motion," each "has an enforceable lien on both the HFCA plant facility as well as the underlying Cargill land that was 'otherwise improved.' "

On rehearing, the district court first addressed the meaning of the recent amendment to rule 1.904(2), which permits the district court to "reconsider" its findings and conclusions previously made. The district court rejected Winger's assertion that new issues and new evidence may be introduced in support of a motion to reconsider under the amended language. The district court reasoned that the sole purpose of the amendment was to permit an appeal within thirty days of a ruling on a 1.904(2) motion without the necessity of examining the propriety of the

motion. The district court concluded that a 1.904(2) motion was not a vehicle for advancing a wholly new legal theory in support of a claim. The district court refused to consider facts not originally presented to the district court in the summary judgment motions.

Applying the 1.904(2) framework, the district court declined to amend its prior ruling based upon the mechanic's lienholders' citation to the "otherwise improved" language in Iowa Code section 572.2(1). The district court stated that "the Mechanics Lienholders have neither alleged the specific work they provided that allegedly 'otherwise improved' Cargill's land nor provided record evidence of the specific improvements they made." The district court also stated that to the extent Peterson did not join Winger's summary judgment motion, Peterson "failed to present any evidence, even in the form of an affidavit, to support it 'otherwise improved' the collateral held by Cargill" even though the district court's case management order specifically invited the parties to proceed independently. The district court denied the motion to reconsider based on the "otherwise improved" language relied upon by the mechanic's lienholders for the first time in the 1.904(2) motions.

The district court further declined to reconsider its interpretation of Iowa Code section 572.2(1) as eliminating contracts with an agent as a basis for attaching mechanic's liens to the property of third parties. The district court also refused to reconsider its alternative determination that the principles of *Romp* and *Stroh* were not applicable. Finally, the district court declined to reconsider its ruling that the doctrine of merger did not eliminate Cargill's lien on HFCA's property.

The district court considered Winger's claim that it did not address the argument that "the Cargill-HFCA lease and lease-mortgage transaction resulted in Cargill being insulated from or granted priority status over the

mechanics liens constitutes an artifice for fraud." By incorporating Cargill's argument on the motion to reconsider, the district court recognized that the mechanic's lienholders were on notice that HFCA had only a leasehold interest in the land by virtue of the filings in the Monroe County recorder's office. Citing *Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 709 (Iowa 1985), the district court noted that contractors have constructive notice of all information in recorded documents and have a duty of inquiry concerning circumstances disclosed by the records. The district court adopted the view that Cargill had the right to enter into a contract with its lessee that provided all improvements should be made at the expense of the lessee. *See Perkins Supply & Fuel Serv. v. Rosenberg*, 226 Iowa 27, 30, 282 N.W. 371, 373 (1938). The district court found the case unlike that presented in *Veale*, 197 Iowa at 241–44, 195 N.W. at 249–50, noting that the relationship between HFCA and Cargill involved a recorded lease that expressly denied HFCA the right to permit mechanic's liens to attach to the lessor's premises.[4]

Finally, the district court addressed an issue presented by Peterson. Peterson claimed that the district court's ruling that the mechanic's liens did not attach to "Cargill's fee interest in the land identified in the mechanic's liens" was overbroad. Peterson claimed that under the district court's case management order, the issue to be resolved was limited to determining whether the mechanic's lien attached to land "owned by Cargill and leased to HFCA." Specifically, Peterson claimed that it performed work on Cargill's land not subject to Cargill's security interest or collateral. The district court ruled that its prior order necessarily

---

[4]We note again that the district court stated that the lease itself was recorded. However, the lease itself was not recorded, but a memorandum of lease indicating its existence was on file at the Monroe County recorder's office.

included priority of liens on "HFCA's Leasehold Interest" that included not only the real property upon which the facility was situated but also any easements on which ingress and egress roads and rail tracks were constructed.

Winger, Peterson, Tri-City, TAI, and American Piping filed notices of appeal.[5]

**II. Standard of Review.**

Although an action to enforce a mechanic's lien is in equity, this case involves an appeal from a ruling on motions for summary judgment and is thus reviewed for corrections of errors at law. *United Suppliers, Inc. v. Hanson*, 876 N.W.2d 765, 772 (Iowa 2016); *A & W Elec. Contractors, Inc. v. Petry*, 576 N.W.2d 112, 113 (Iowa 1998). Questions of statutory interpretation that inhere in a motion for summary judgment are reviewed for errors at law. *See Rhoades v. State*, 880 N.W.2d 431, 434 (Iowa 2016). The mechanic's lien statute is liberally construed to promote restitution, prevent unjust enrichment, and assist the parties in obtaining justice. *Carson v. Roediger*, 513 N.W.2d 713, 715 (Iowa 1994).

**III. Overview of Iowa Mechanic's Lien Law.**

**A. General Purpose.** "A mechanic's lien is a claim against real property for the value of labor and materials furnished by the claimant in improvement of the property." Roger W. Stone, *Mechanic's Liens in Iowa*, 30 Drake L. Rev. 39, 41 (1980) [hereinafter Stone]. The theory and purpose of a mechanic's lien is to protect persons who have supplied labor or material for the improvement of real property by giving the lienholder security independent of their contractual remedies against the owner of the land. *Id.* at 42. The principle underlying the mechanic's lien statute

---

[5]Other mechanic's lien claimants filed notices of appeal but subsequently voluntarily dismissed their appeals.

is that a party who materially increases the value of the owner's property is entitled to look to the improved property as security for the effort. *Id.*

A mechanic's lien is purely statutory in nature. *Carson*, 513 N.W.2d at 715. Iowa's territorial government enacted a mechanic's lien statute in 1838, and in one form or another, a mechanic's lien statute has been part of Iowa law up until the present day. *See* Stone, 30 Drake L. Rev. at 41–42. Relatively recent legislative changes have tended to curtail or limit the scope of mechanic's liens. Roger W. Stone, *Mechanic's Liens in Iowa— Revisited*, 49 Drake L. Rev. 1, 2–3 (2000). At all times, however, Iowa's mechanic's lien statute has required that a party claiming a mechanic's lien must point to a contract to recover on a mechanic's lien. *Queal*, 200 Iowa at 1379, 206 N.W. at 628; *see Giese Constr. Co. v. Randa*, 524 N.W.2d 427, 430–31 (Iowa Ct. App. 1994).

**B. Cases Involving Contracts with a Lessee: *Romp* and *Stroh*.** Generally, the mere existence of a contract with a lessee does not give rise to a mechanic's lien against the property of the lessor. *See Thompson Yards, Inc. v. Haakinson & Beaty Co.*, 209 Iowa 985, 986–87, 229 N.W. 266, 267 (1930). There are two Iowa cases, however, that hold a mechanic's lien might attach to the property of the lessor when the work and services were provided under contracts with the lessee.

The first case is *Romp*. In this case, the landowner entered into a lease with Romp and others who intended to enter the mushroom business. 244 Iowa at 205–06, 56 N.W.2d at 602–03. Romp also borrowed funds from the landowner to finance construction of buildings on the property and provided the landowner with a mortgage on the buildings. *Id.* at 206–07, 56 N.W.2d at 602–03. Romp contracted with Denniston & Partridge to furnish materials for the buildings. *Id.* at 206, 56 N.W.2d at 602. Romp did not pay Denniston & Partridge for their work, and

Denniston & Partridge filed a mechanic's lien. *Id.* at 206–07, 56 N.W.2d at 602–03. The question in the case was whether the mechanic's lien attached to the property of the owner of the real estate or only to property of the lessee who contracted for the services. *Id.* at 209, 56 N.W.2d at 604.

The *Romp* court cited two provisions of the mechanic's lien statute. First, the *Romp* court cited the definition of "owner" under the applicable mechanic's lien statute. *Id.* at 208, 56 N.W.2d at 603. Under the then-effective version of Iowa Code section 572.1, " 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made, having the capacity to contract." *Id.* Further, the *Romp* court cited the then-effective version of Iowa Code section 572.2, which provided for mechanic's liens arising out of "any building or land for improvement, alteration, or repair thereof . . . by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor." *Id.*

Applying the statutory provisions, the *Romp* court concluded that the lessees were agents of the lessor under the facts presented. *Id.* at 209–11, 56 N.W.2d at 604–06. The *Romp* court noted that the rental charged by the lessor contemplated improvement of the land. *Id.* at 210–11, 56 N.W.2d at 605. The lease was for a short-term period of five years with one five-year term of renewal with no provision at the end for removal of the improvements. *Id.* at 211, 56 N.W.2d at 605. The lessor loaned the lessee money with the expectation that a substantial part of the money would be used to construct a building or buildings. *Id.*

The *Romp* court also considered whether the mortgage lien of the lessor was superior to the mechanic's lien. *Id.* at 213, 56 N.W.2d at 606. The *Romp* court concluded that it was not. *Id.* The *Romp* court stated that such a result, under the facts of the case, "would permit something very like a fraud upon the suppliers of materials or labor." *Id.* The *Romp* court

declared, "The rule that one who advances money to another for the erection of improvements on land acquires a lien superior to those of materialmen or laborers has no application" under the facts where the lessor was the "owner" and the improvements "were made for her 'benefit.'" *Id.* According to the *Romp* court, she cannot evade her responsibility by taking a mortgage. *Id.*

A second case is *Stroh.* In *Stroh,* an unrecorded lease required the lessee to construct a car-wash/gasoline facility on the premises. 247 N.W.2d at 751–52. Under the lease, the lessor approved plans for the facility. *Id.* at 751. Upon completion of the construction, the lease provided that the lessor pay the lessee $50,000, the estimated cost of the project. *Id.* The lease provided for annual rent of $16,250 for a fifteen-year term with an option for two consecutive five-year terms of renewal. *Id.* at 751–52. Title in the property vested with the lessor upon completion of the lease. *Id.* at 752.

Upon completion of the project, the lessor paid the $50,000 to the lessee for construction. *Id.* The general contractor hired by the lessee gave Stroh a check for construction services, but the check was dishonored. *Id.* Stroh went unpaid. *Id.* As a result, Stroh filed a mechanic's lien and sought to foreclose the mechanic's lien against the real property of the lessor. *Id.*

The question in the case was whether Stroh's mechanic's lien attached to the real property of the owner or solely on the property of the lessee. *Id.* The *Stroh* court cited Iowa Code section 572.2, which at the time provided that a mechanic's lien may arise by virtue of a contract with the owner *or his agent. See id.*

The *Stroh* court recognized that, ordinarily, mere knowledge or consent to the making of improvements did not subject the interest of the

owner to a mechanic's lien. *Id.* But according to *Stroh*, if the lessor has by express or implied agreement contracted for the improvement of his real property, the mechanic's lien attaches to the property of the owner. *Id.* The *Stroh* court stated that such express or implied agreement particularly arose in situations where the building or improvements became the property of the lessor after a comparatively short term. *Id.* In such situations, according to *Stroh*, "the lessee is considered to be the agent of the lessor within the meaning of [Iowa Code section] 572.2." *Id.*

The *Stroh* court held that the mechanic's lien under the facts of the case attached to the lessor's real property. *Id.* The *Stroh* court noted that the construction of the car wash materially added to the value of the land, with the assessed value increasing from $22,491 to $79,060 after construction of the project. *Id.* The improvements immediately became the property of the lessor. *Id.* Finally, the facility was the primary reason for the rent of $16,250. *Id.*; *see also A & W Elec. Contractors*, 576 N.W.2d at 114 ("[A] tenant's authority to bind the land arises only when the improvement is in some way demanded by the lease.").

**C. Statutory Changes in 2007 and 2012.** Iowa's mechanic's lien statute was amended in 2007 and 2012. The 2007 amendments removed contracts with "the owner's agent" as giving rise to mechanic's liens on the property of the owner under Iowa Code section 572.2(1). *See* 2007 Iowa Acts ch. 83, § 3 (codified at Iowa Code § 572.2(1) (Supp. 2007)). The 2007 amendments also eliminated the term "owner's agent" from other provisions of the mechanic's lien statute. *See id.* §§ 2, 4, 6, 17 (codified at Iowa Code §§ 572.1(6), .8(1)(*c*), .10, .28(1) (Supp. 2007)).

The 2012 amendment, among other things, limited the scope of the term "owner." *See* 2012 Iowa Acts ch. 1105, § 2 (codified at Iowa Code § 572.1(8) (2013)). As amended in 2007, the term "owner" generally meant

"the record titleholder" in the property. 2007 Iowa Acts ch. 83, § 2 (codified at Iowa Code § 527.1(4) (Supp. 2007)). But the 2007 version additionally provided that owner included "every person for whose use or benefit any . . . improvement is made." *Id.* In 2012, the legislature eliminated the additional language. 2012 Iowa Acts ch. 1105, § 2 (codified at Iowa Code § 527.1(8) (2013)). Thus, at all times relevant to this proceeding, the term "owner" in the mechanic's lien statute was narrowly defined as "the legal or equitable titleholder of record." Iowa Code § 572.1(8).

### IV. Positions of the Parties.

#### A. Winger.

1. *Proper interpretation of Iowa Code section 572.2(1).* On appeal, Winger first asserts that the district court erred in determining that, under Iowa Code section 572.2(1), "a contract with the owner's agent" is no longer sufficient to provide a basis for a mechanic's lien. According to Winger, nothing in Iowa Code section 572.2(1) prevents a mechanic's lien from attaching to land where the landowner's agent contracts for improvements.

According to Winger, the legislative amendment in 2007 was not designed to eliminate the law of agency in the field of mechanic's liens. Winger cites the following explanation attached to the 2007 amendment, which stated, "The bill eliminates owner agents and trustees from the list of persons *against whom* a mechanic's lien may be filed." H.F. 774, 82d G.A., explanation (Iowa 2007) (emphasis added). According to Winger, the technical correction was not designed to alter the substantive law of mechanic's liens, but only related to the manner of filing the liens on the public record.

2. *Notice of lease provisions.* In setting up the argument that its work for HFCA was sufficient to provide a basis for a mechanic's lien to attach to Cargill's property, Winger preliminarily asserts that the potential

lienholders in this case did not have actual or constructive notice of section 22.14 of the lease between Cargill and HFCA. That provision states that nothing in the lease should be deemed as creating a partnership, joint venture, or any relationship other than the relationship of landlord and tenant. The provision also states nothing in the lease should be construed as causing either party to be responsible for the debts or obligations of the other party.

Winger notes that the lease itself was not filed in the Monroe County recorder's office, but only a memorandum of lease. Thus, from the public record, Winger argues it was not on constructive notice of the specific terms of the unfiled lease, including section 22.14 or any other provision. Further, Winger asserts the record is devoid of any evidence that it had actual notice of the terms of the lease.

3. *Application of* Romp *and* Stroh. Winger claims Cargill and HFCA were joint adventurers which subjected Cargill's property to a mechanic's lien under *Romp*, 244 Iowa at 208–09, 56 N.W.2d at 604. Winger asserts that while HFCA and Cargill did not share profits and losses, Cargill still benefitted beyond the payment of rent by obtaining from HFCA a secure supply of necessary chemicals.

Winger also claims that HFCA had express or implied authority to contract for improvements under the teaching of *Stroh*, 247 N.W.2d at 752. Winger points out that under the lease, HFCA was required to construct the improvements giving rise to the mechanic's liens in this case. While Winger recognizes that the lease calls upon HFCA to return the property to Cargill in its original condition after fifty years, it argues that in all likelihood a large chemical facility is not going to be destroyed at the end of the lease term. To not allow the mechanic's liens to attach to Cargill's land under the circumstances, according to Winger, would be inequitable.

4. *After-acquired mortgage.* Winger launches two arguments challenging the district court's conclusion that Cargill as assignee of the U.S. Bank construction mortgage holds a position superior to the mechanic's liens in this case. Winger first asserts that the mortgage held by Cargill should merge with its fee simple interest in the property. Next, Winger asserts that equity will not facilitate an artifice for fraud by giving Cargill's after-acquired mortgage priority over the mechanic's liens.

5. *Otherwise improved.* Finally, Winger asserts that the district court erred in dismissing its argument, raised in its rule 1.904(2) motion, concerning the "otherwise improved" language in Iowa Code section 572.2(1). Parsing the statutory language, Winger asserts that it has a lien for construction services rendered pursuant to its contract with HFCA on "such building or improvement"—namely, HFCA's facility—and "upon the land or lot so graded, landscaped, fenced, or otherwise improved"—namely, Cargill's land. Winger indicates that the Oxford comma—the third comma in the phrase "so graded, landscaped, fenced, or otherwise improved"—means that the term "otherwise improved" is not limited to activities similar to grading, landscaping, or fencing, but instead, has a broader meaning that generally includes "improvements."

Winger challenges the district court's conclusion that this claim was not preserved below. Winger notes that its petition alleges both that its "labor and services contributed to the improvement, betterment, alteration, and repair of the EDDYVILLE PROPERTY" and that, as a result, it "is entitled to . . . a lien on the EDDYVILLE PROPERTY to secure payment of amounts owed to it for and relating to those services and that work." Winger claims that its motion for summary judgment raised "the betterment issue" by alleging that Cargill received substantial benefit from the labor furnished and materials provided.

6. *Joinder by other parties.* Tri-City, TAI, and American Piping join Winger's appellate briefing. They "further state that each furnished labor and materials upon [Cargill's] buildings and land for the improvement, alteration, or repair thereof" and "are similarly situated to Winger."

**B. Peterson.** Peterson generally joins the arguments advanced by Winger. Peterson emphasizes, however, that it provided services to the real property including moving dirt; providing concrete paving and erosion control; building culverts and containment basins; excavating; stripping, salvaging, and spreading topsoil; clearing and grubbing the land; installing storm sewers and fencing; seeding; mulching; backfilling; and raising the grade of the land. As a result, Peterson claims that it is entitled to a mechanic's lien on Cargill property on the basis that it otherwise improved the land under Iowa Code section 572.2(1).

**C. Cargill.**

1. *Proper interpretation of Iowa Code section 572.2(1).* Cargill argues that Iowa Code chapter 572 is straightforward. Cargill emphasizes the following language in section 572.2(1):

> Every person who furnishes any material or labor . . . by virtue of any contract with the owner, owner-builder, general contractor, or subcontractor shall have a lien upon such building or improvement, and land belonging to the owner on which the same is situated . . . .

Iowa Code § 572.2(1). According to Cargill, the statute plainly states that a mechanic's lien arises only on a building, improvement, or land "belonging to the owner." Here, HFCA has no land belonging to it. The land belongs to Cargill. As a result, Cargill concludes, the mechanic's liens for work provided to HFCA do not attach to Cargill's fee simple interest in the land.

Cargill backs up its interpretation by citing the amendments to Iowa's mechanic's lien statute passed in 2007. Cargill notes that the 2007 amendment expressly removed the words "the owner's agent, trustee" from the list of parties who could enter into contracts giving rise to mechanic's liens. 2007 Iowa Acts ch. 83, § 3 (codified at Iowa Code § 572.2(1) (Supp. 2007)).

Further, Cargill notes that the legislative amendments in 2007 and 2012 substantially changed the definition of "owner." In 2007, the term "owner" was amended to mean "the record titleholder" but retained the phrase "every person for whose use or benefit any building, erection, or other improvement is made." *Id.* § 2 (codified at Iowa Code § 572.1(4) (Supp. 2007)). The definition of owner was again amended in 2012 by deleting the language about benefitted persons. 2012 Iowa Acts ch. 1105, § 2 (codified at Iowa Code § 572.1(8) (2013)). As a result, after 2012, "owner" under the statute was defined as "the legal or equitable titleholder of record." Iowa Code § 572.1(8).

Cargill views the explanation accompanying the bill as insignificant. Cargill observes that the language in the explanation cited by Winger makes little sense because mechanic's liens are charged against property, not persons. In any event, Cargill asserts that the actual action taken by the legislature must be given effect notwithstanding the less-than-clarifying explanation accompanying the bill as originally filed.

According to Cargill, the statutory amendments to the mechanic's lien statute plainly undermine the validity of *Romp*, 244 Iowa at 208–09, 56 N.W.2d at 604, and *Stroh*, 247 N.W.2d at 752. Under the amended statute, the fact that a lessor benefits from a lessee's construction of a building does not make the lessor an "owner" under the statute. And,

mechanic's liens arise only on property of the "owner" narrowly defined as the record titleholder.

Cargill rejects the notion that its interpretation of the statute eliminates the law of agency. Of course, a corporation, for example, acts through its agents. Cargill asserts that its interpretation does not prevent an owner from entering contracts through its agents. But according to Cargill, a contract with the owner's agent, where the agent is the party to the contract, is not sufficient to give rise to a mechanic's lien on the owner's property. Cargill asserts that the amendments make clear that a mechanic's lien will not attach to property of an owner where there is a contract with the owner's agent, but not with the owner. Here, Cargill explains, HFCA entered into contracts on its own behalf and not on behalf of Cargill.

2. *Notice of lease provisions.* Cargill notes in passing that Winger was on notice from the recorded memorandum of lease that Cargill, not HFCA, owned the fee interest in the land. According to Cargill, Winger did not have a contract with Cargill and thus its mechanic's lien does not extend to Cargill's fee interest.

3. *Application of* Romp *and* Stroh. Cargill emphasizes that in light of the 2007 and 2012 statutory amendments, there is no longer any basis for attaching a mechanic's lien to Cargill's fee interest in the real estate. In the alternative, however, even if the statutory argument is rejected, Cargill argues that *Romp* and *Stroh* have no application under the facts presented.

4. *After-acquired mortgage.* Cargill argues that no merger occurs as a result of U.S. Bank's assignment of its construction mortgage lien to Cargill. Cargill admits that it received an assignment of the construction mortgage lien. But, Cargill notes, HFCA still holds title to the leasehold

interest. According to Cargill, Winger seeks merger of HFCA's leasehold interest with Cargill's fee simple interest in the land. Cargill argues that the fact that Cargill has the right to foreclose on the mortgage lien does not address the separate issue of whether the leasehold interest has merged with the dominant estate.

In any event, Cargill points to our precedent stating,

> It is a well-settled rule of equity jurisprudence that a purchase by a mortgagee of the mortgaged premises does not merge the mortgage in the legal title, when it is the interest of the mortgagee that it should be kept alive, if the rights of third persons are not thereby prejudiced.

*Kilmer v. Hannifan,* 113 Iowa 281, 282, 85 N.W. 16, 16 (1901). Here, prior to U.S. Bank assigning the mortgage to Cargill, Winger had a mechanic's lien in the HFCA facility and in HFCA's leasehold interest in the land. The assignment did not affect that interest. According to Cargill, Winger impermissibly seeks to use the assignment as a sword to advance its position.

5. *Otherwise improved.* Cargill asserts that under Iowa Code section 572.2(1), there are two methods of establishing a mechanic's lien. Under the first method, a lien arises on the "building or improvement, and land belonging to the owner on which the same is situated." Iowa Code § 572.2(1). Under the second method, according to Cargill, "those engaged in grading, sodding, installing nursery stock, landscaping, sidewalk building, fencing on any land or lot" are entitled to a lien on "the land or lot so graded, landscaped, fenced, or otherwise improved, altered, or repaired." *Id.*

Cargill asserts that Winger did not raise the issue of whether it was entitled to a mechanic's lien against Cargill's fee interest under the second approach in the district court. Cargill recognizes that Winger raised the

issue in its 1.904(2) motion after the district court ruled on the motions for summary judgment, but Cargill argues that new issues not presented to the district court cannot be raised in a 1.904(2) motion. According to Cargill, 1.904(2) motions, even under our amended rule, are not a vehicle to advance a new legal theory.

In any event, Cargill asserts that Winger is not entitled to relief under the otherwise improved theory. According to Cargill, because the phrase "otherwise improved" follows a specified list relating to grading, landscaping, and fencing, the language applies only to similar activity and does not generally apply to providing material or labor to construct a building. Cargill argues that Winger's interpretation of the statute would render superfluous prior language in the statute providing that provision of materials and construction services provide a lien on the building and "land belonging to the owner on which the same is situated." Iowa Code § 572.2(1).

**V. Discussion.**

**A. Proper Interpretation of Iowa Code Section 572.2.** A threshold issue is whether a mechanic's lien on the underlying fee interest may arise under the current version of Iowa Code section 572.2(1) where the contract is with the lessee and not the owner of the property. If the answer to this question is no, there is no need to consider whether the mechanic's liens attach under *Romp*, 244 Iowa at 208–09, 56 N.W.2d at 604, and *Stroh*, 247 N.W.2d at 752.

Based on our review of the statute, we conclude that Cargill has the better argument. A mechanic's lien is a creature of statute. *Carson*, 513 N.W.2d at 715. The amendments of 2007 and 2012 narrow the definition of owner and eliminate contracts with agents as a basis for a mechanic's lien against property of an owner. *See* 2012 Iowa Acts ch. 1105, § 2

(codified at Iowa Code § 572.1(8) (2013)); 2007 Iowa Acts ch. 83, § 3 (codified at Iowa Code § 572.2 (Supp. 2007)). We conclude the language used by the legislature should be given its natural effect.

We do not view the legislative amendments in 2007 and 2012 as working a profound change in the law of agency. As pointed out by Cargill, an agent can still enter into a contract on behalf of a principal. When an agent acts within the scope of authority on behalf of a principal, a contract arises with the principal.

Under our interpretation of legislative action, *Romp* and *Stroh* are no longer good law. Both of these cases involved contracts with lessees who were determined to be, in essence, agents of fee owners because of the beneficial relationship between the lessors and the owners that extended well beyond the ordinary landlord–tenant relationship. It may be that under these cases, Winger would have an argument for the attachment of mechanic's liens to Cargill's fee simple interest. But by reworking the statute to limit mechanic's liens to property belonging to a narrowly defined owner, the legislature has adopted an approach in conflict with *Romp* and *Stroh*. Because we find that the language of the statute precludes the attachment of mechanic's liens to the fee simple interest of Cargill, there is no occasion to consider application of our now superseded precedent.

**B. Otherwise Improved.** In its summary judgment motion below, Winger did not assert that it had otherwise improved Cargill's property under Iowa Code section 572.2(1). Winger's statement of undisputed facts did not include a factual claim that it had furnished seeding, sodding, excavating, or similar services to Cargill's land. Its motion for summary judgment generally asserted that "Cargill received substantial benefit from the labor furnished and materials provided by the lienholders."

Winger's memorandum in support of its motion for summary judgment asserted in a heading that "the land owner is subject to mechanic liens filed against its property when it benefits from the work performed and materials provided thereon by its lessee." The argumentation under the heading focused on the agency principles articulated in *Romp* and *Stroh*. Under these cases, Winger asserted that HFCA was an agent for, or in a joint venture with, Cargill and that the mechanic's liens in this case could attach to Cargill's property as a result. In its reply brief to Cargill's resistance, Winger defended its claim that HFCA was Cargill's agent but did not raise the otherwise improved language of the statute.

Nowhere in the summary judgment proceedings did Winger make the factual claim to have provided landscaping-type work on Cargill's land, and Winger did not make the legal argument that it was entitled to a mechanic's lien by virtue of the otherwise improved language under Iowa Code section 572.2. Once the district court ruled on the summary judgment motions, Winger raised the otherwise improved theory in its rule 1.904(2) motion. In that motion, Winger generally asserted that it provided labor which improved the Cargill land and specifically raised the alternative statutory theory that it provided materials and services that otherwise improved Cargill's land.

Peterson is in a slightly different position. Peterson on appeal notes that, in its "Answer and Counterclaim and Cross-Claim to Foreclose Mechanic's Lien," it alleged that it provided services to Cargill's land and provided an affidavit supporting the claim. But the district court's case management order required the parties to determine lien priority in a summary judgment proceeding. With respect to the summary judgment motions that were filed pursuant to the case management order, Peterson

joined Winger's summary judgment motion and brief. It did not make any independent filing of its own related to the otherwise improved issue. The same is true for Tri-City, TAI, and American Piping. For all purposes relevant to the "otherwise improved" issue, Peterson, Tri-City, TAI, and American Piping were hitchhikers of Winger. Thus, like Winger, these parties raised the issue in a 1.904(2) motion.

We think Winger, Peterson, Tri-City, TAI, and American Piping did not raise the otherwise improved issue before the district court when the motions for summary judgment were considered. Although the otherwise improved language appears in the same statutory provision relied upon by Winger and the other four parties, it presents a different legal theory with a different factual predicate than the issues actually litigated in the summary judgment proceedings. Winger's motion for summary judgment, which the other four parties joined, along with its supporting brief, urged the court to find that Cargill was either an agent or joint adventurer under *Romp* or *Stroh*. Aside from the agency and joint venture theories, Winger did not present an alternate theory to support the attachment of mechanic's liens to Cargill's land. Under the circumstances, we think the claim was not presented to the district court in the cross-motions for summary judgment, and therefore, it is not surprising that the district court did not rule upon the unpresented claim. As a result, the alternate issue was not preserved. *Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002) (explaining that a motion under the precursor to rule 1.904(2) is not designed as a replacement of the requirement to preserve error).

Winger asserts, however, that our amendment to rule 1.904(2) altered our approach to issue preservation. Winger argues that a timely motion for reconsideration under the new rule not only stays the time to

file an appeal in all cases but also involves a different approach to issue preservation.

We do not agree. Our amendment to rule 1.904(2) was designed to eliminate the difficult choice faced by lawyers in determining whether a 1.904(2) motion was a valid request to consider an issue overlooked by the district court or whether it was a mere rehash and therefore did not operate to stay the time for filing an appeal. As revealed by our comment to the rule change, it was not designed to overhaul our preservation doctrine. Iowa R. Civ. P. 1.904 cmt. ("[T]he rule does not address whether a rule 1.904(2) motion preserves error for purposes of appeal as to evidence or arguments raised for the first time in that motion.").

**C. Merger.** No one disputes that Winger and the other four parties have a lien against HFCA's facility and its leasehold interest. The question arises, however, whether Cargill's construction mortgage lien acquired by assignment from U.S. Bank is superior to the mechanic's liens. Winger seeks to defeat the priority of Cargill's after-acquired construction mortgage lien by asserting that Cargill's interests as reflected in its construction mortgage lien merges with its fee simple interest in the land.

We disagree. There is authority for the proposition that, at least under some circumstances, when an owner of land in fee simple acquires a leasehold interest in the property, the interests merge. *See In re Estate of Herring*, 265 N.W.2d 740, 741 (Iowa 1978). Here, however, as the district court found, Cargill has not acquired HFCA's leasehold interest in the property or any ownership of the facility and HFCA still owns the leasehold interest and the facility. On appeal, Winger maintains that "[l]andlord Cargill holds the dominate estate in relation to the lessee HFCA." What Cargill has acquired by assignment from U.S. Bank is an interest in a construction mortgage, and resulting lien, against the

property interest of HFCA. As a result, the differing interests of Cargill do not merge.

In any event, Iowa caselaw declares that in situations where the mortgagee purchases the equity of redemption from the mortgagor, the mortgage debt, and the mortgage, is extinguished but "if it is to the interest of the mortgagee, and it can be done without prejudice to the rights of the mortgagor or third persons, the doctrine of merger . . . will not apply." *Vannice v. Bergen*, 16 Iowa 555, 562 (1864). Here, Winger and the other four parties are not prejudiced by lack of merger as their lien position prior to Cargill obtaining the assignment of the mortgage was inferior to the construction mortgage lien of U.S. Bank. Thus, the position of Winger and the other four parties has not been affected by the transfer of the mortgage interest. Further, as noted in later caselaw,

> [i]f there was no expression of his intention in relation to the matter at the time he acquired the equity of redemption, it will be presumed, in the absence of circumstances indicating a contrary purpose, that he intended to do that which would prove most advantageous to himself.

*Tom Riley Law Firm, P.C. v. Padzensky*, 430 N.W.2d 416, 418 (Iowa 1988) (*quoting Overland-Wolf, Inc. v. Koory*, 162 N.W.2d 889, 890–91 (Neb. 1968)).

In sum, Cargill obtained its construction mortgage interest under less than desirable circumstances, namely, upon the collapse of the HFCA project and the satisfaction of debt by U.S. Bank under the financing arrangements. When Cargill obtained the interest in the construction mortgage, it had no possible interest in merging the construction mortgage estate with its fee simple estate and thereby losing its superior lien position that arises from the construction mortgage.

**D. Fraud or Unjust Enrichment.** Winger generally asserts that Cargill will be unjustly enriched and that its actions amount to a fraud. We do not agree. A mechanic's lien is a creature of statute. *Carson*, 513 N.W.2d at 715. Outside of the statute, there are no substantive rights to a mechanic's lien.

There is nothing in the record to suggest that Winger and the other four parties were defrauded by Cargill out of their statutory rights. They were on notice of the legislative changes. Further, there is no suggestion that Cargill at any time misrepresented that Cargill owned the land but that the facility and the lease were owned by HFCA. Moreover, by examining the public record, Winger and the other four parties would have known that HFCA did not own the land but was a mere lessee. Winger and the other four parties did not claim that their contracts were in fact with Cargill and that HFCA was acting as an agent to bind Cargill as principal. They knew that HFCA was the party to their construction contracts. As a result of the above, Winger and the other four parties cannot be said to have been defrauded of a statutory right that they no longer had.

Winger also argues that it was fraudulent for Cargill to claim a superior right over their mechanic's liens through the acquisition of the construction mortgage lien from U.S. Bank. Prior to the assignment of U.S. Bank's interest, however, the liens of Winger and the other four parties were subject to U.S. Bank's interest. The assignment of the construction mortgage lease to Cargill did not deprive them of anything. Further, the after-acquired mortgage acquired by Cargill was not on its own property, as suggested by Winger, but was on the property owned by HFCA, namely, HFCA's facility and the leasehold interests.

The case is thus distinguishable from *Veale*, 197 Iowa at 241–43, 195 N.W. at 249, where the improvements were made on the owner's land by a builder, and after the improvements were made, the property was to be sold to the builder at a price which reflected the improvements. The *Veale* court emphasized that the improvements were made on the owner's own property. *Id.* at 244, 195 N.W. at 250. Unlike in *Veale*, Cargill did not finance the construction of its own building which it was going to sell at a profit. The HFCA project was largely financed by U.S. Bank. Cargill did finance part of the construction, but with respect to the U.S. Bank financing, agreed to a put in the event of an HFCA default to close the deal. Cargill was the assignee of a construction mortgage that financed the building owned by HFCA when the default occurred. We decline to find fraud under the circumstances presented.

## VI. Conclusion.

For the above reasons, the rulings of the district court on the motions for summary judgment are affirmed. The matter is remanded to the district court for any further proceedings that may be required.

**AFFIRMED.**

All justices concur except Waterman, J., who takes no part.