# IN THE COURT OF APPEALS OF IOWA

No. 18-1098
Filed September 25, 2019

**DAVENPORT DEVELOPMENT GROUP LLC and RUHL COMMERCIAL COMPANY, LLC doing business as NAI RUHL COMMERCIAL CO.,**
  Plaintiffs-Appellants,

**vs.**

**IRREVOCABLE TRUST OF DONALD L. FRANTZ, DATED OCTOBER 22, 2010,**
  Defendant-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.

A developer appeals the ruling of the district court denying its claims. **AFFIRMED.**

Bernard J. Hofmann and Matthew C. Holmer of Brooks Law Firm, P.C., Rock Island, Illinois, for appellants.

Marc Gellerman, Bettendorf, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A development company contends a seller breached certain real estate contracts.

## I.    *Background Facts and Proceedings*

Davenport Development Group, LLC (Davenport Development) agreed to purchase two commercial properties from companies owned by the Donald L. Frantz Trust (Trust).  The purchase agreements were subject to various conditions, including "[c]ourt approval."  Davenport Development did not seek or obtain court approval before the closing date, which was extended twice by agreement.

Six weeks after the closing date, the Trust sold the companies that owned the real estate to Donald Frantz's son, Ronald D. Frantz.  The agreement between the Trust and Ronald stipulated that Ronald would "consummate the sale" of the two commercial properties to Davenport Development, "provided that the buyers are still interested in consummating the transactions."  The agreement also referred to "a new or amended offer to purchase said properties."  The sales of the properties to Davenport Development were not consummated.

In time, Davenport Development sued the Trust for breach of contract and negligent and fraudulent misrepresentation.  Ronald agreed he would hold the trustee of the Trust harmless from Davenport Development's claims.[1]   He affirmatively stated the real estate purchase agreements were "subject to Court approval" and there were "numerous defenses . . . that call[ed] into question

---

[1] The Trust remained the named defendant in the litigation, and the case proceeded to trial against the Trust.

whether the offers made by Davenport Development . . . [were] enforceable contracts."

The district court declined to rule as a matter of law that Ronald was bound by his stipulation to "consummate the sales." Following trial, the court found "no breach of the contracts because the contingency of having court approval of the sales was never received." The court further concluded "all of [Davenport Development's] other theories of liability fail[ed.]"

Davenport Development sought expanded findings and conclusions. The district court denied the motion in its entirety. The court reiterated,

> [T]here was NO court approval of the sales prior to or on the day scheduled for the last closing . . . . In addition, there was no request . . . to postpone these sales and reschedule the closing dates to allow the court time to approve the sales. Clearly, [Davenport Development] knew how to accomplish that as they had done it twice before.

This appeal followed.

## II.    Analysis

Davenport Development acknowledges "the court never approved the sale" of the two properties as required by both real estate purchase agreements but argues the district court erred in resolving the claims on this basis. In its view, the court should have gone on to decide "whether the Trust showed bad faith in failing to fulfill the condition precedent" and "whether the Trust acted in bad faith by transferring the property to Ronald Frantz."

"A contract imposes upon each party a duty of good faith in its performance and enforcement." *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990) (citing Restatement (Second) of Contracts § 205 (1981)). The obligation extends to

compliance with conditions precedent. *See Conrad Bros. v. John Deere Ins.*, 640 N.W.2d 231, 240 (Iowa 2001) ("It is widely recognized that 'a party may not rely on a condition precedent when by its own conduct it has made compliance with that condition impossible.'" (citation omitted)); *Dovetail Builders, L.L.C. v. Woepking*, No. 06-0272, 2007 WL 1062860, at *4 (Iowa Ct. App. Apr. 11, 2007) (finding substantial evidentiary support for district court's conclusion that the purchasers "failed to make a good faith effort to sell their property"). "Conditions precedent are . . . those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Khabbaz v. Swartz*, 319 N.W.2d 279, 283 (Iowa 1982) (quoting *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct. App. 1979)).[2]

Court approval of the real estate purchase agreements was a condition precedent to the Trust's performance of the contract. *See Peterson v. Adam*, No. 15-1228, 2016 WL 3556466, at *2 (Iowa Ct. App. June 29, 2016). Because court approval was not obtained by the extended closing date, the Trust had no obligation to transfer possession of the properties to Davenport Development.

Davenport Development falls back on an argument that time was not of the essence in obtaining court approval. *See SDG Macerich Props., L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002) ("A cardinal rule of contract construction is

---

[2] Although the Second Restatement of Contracts has distanced itself from "condition precedent" language, our highest court continues to use it. *See Niday v. Roehl Transp., Inc.*, No. 18-0712, 2019 WL 1486603, at *6 n.7 (Iowa Ct. App. Apr. 3, 2019) (citing Restatement (Second) of Contracts § 224 cmts. c, e; *see also Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 529–30 (Iowa 2019).

that 'time is of the essence.'" (citation omitted)). Like the district court, we are unpersuaded by the argument. "Contract provisions which not only set the time of performance but also spell out the consequences of nonperformance usually have been construed to make time of the essence." *Id.* (citation omitted). The contracts contained deadlines—deadlines that were extended to dates certain. The contracts also provided for remedies in the event of nonperformance. By their terms, the contracts made time of the essence in satisfying the conditions precedent to performance. We turn to Davenport Development's bad faith arguments.

Davenport Development's argument that the Trust acted in bad faith by failing to obtain court approval presupposes that the Trust, rather than Davenport Development, bore the responsibility of satisfying this condition. There is room to question the assumption, because the onus to fulfill most of the remaining conditions within the contracts fell upon Davenport Development. That said, the real estate purchase agreements did not expressly identify the party responsible for satisfying the condition. Presumably, then, both parties had an obligation to act in good faith to facilitate court approval.

The district court found that the Trust "applied to the court for approval" shortly after the contracts were executed "but no approval was ever received," precluding the Trust from "sell[ing] the properties." Implicit in the court's findings was a determination that the Trust acted in good faith. *Hubby v. State*, 331 N.W.2d 690, 695 (Iowa 1983) ("[W]e assume as fact an unstated finding that is necessary to support the judgment against plaintiff."). Substantial evidence supports the implicit finding. *See Dovetail Builders, L.L.C.*, 2007 WL 1062860, at *4 (applying

substantial evidence standard to question of good faith compliance with condition precedent). Specifically, the trustee testified as follows:

> Q. In addition to what's in the court file, you had sometime between April 28th and July 30th of 2015 authorized [your attorney] to petition the court to get court approval for the sale of these two properties. A. Yes.
> Q. And the court never entered an order doing that, did they? A. No.
> . . . .
> Q. Okay. On—when you executed that agreement, had there been an order approving the sale? A. No.
> Q. Was there an application to do that? A. Yes.
> Q. And on July 30th, had the court entered an order approving the sale of this property? A. No.

Davenport Development presented scant if any evidence to suggest the Trust impeded or prevented the court from approving the sales. Davenport Development also did not explain why it declined to press for court approval. We conclude Davenport Development did not prove the Trust acted in bad faith in failing to obtain court approval of the purchases by the closing date.

We turn to Davenport Development's contention that the Trust acted in bad faith by transferring the properties to Ronald Frantz. Davenport Development had no dog in that fight; its contracts with the Trust expired for failure of a condition precedent and it was not a party to the agreement between the Trust and Ronald Frantz.[3]

We affirm the district court's denial of Davenport Development's petition.

**AFFIRMED.**

---

[3] Davenport Development did not argue it was a third-party beneficiary of the agreement between the Trust and Ronald. *See, e.g.*, *Sanford v. Fillenwarth*, 863 N.W.2d 286, 293 (Iowa 2015); *Davis v. Am. Int'l Bridge, Inc.*, 910 N.W.2d 621, 625–26 (Iowa Ct. App. 2017).